(No. 54046.—

ELOUISE WILSON *et al.*, Appellants, v. ALL-STEEL, INC., Appellee.

*Opinion filed November 13, 1981.*

Peter R. Meyers, of Chicago, for appellant Elouise Wilson.

James C. Franczek, Jr., and Marian C. Haney, of

Vedder, Price, Kaufman & Kammholz, of Chicago, for appellee.

Tyrone C. Fahner, Attorney General, of Springfield (J. Stuart Garbutt, special assistant Attorney General, of Chicago, of counsel), for appellant Department of Human Rights.

Demetrius E. Carney, of Lafontant, Wilkins & Butler, and Alan S. Gilbert, Patricia A. Greenfield, Les Jin, and Joan M. O'Shaughnessy, all of Chicago, for *amici curiae* NAACP *et al.*

Ann P. Sheldon, Susan W. Wanat, and John M. Cannon, of Chicago, for *amici curiae* Chicago Association of Commerce and Industry and Mid-America Legal Foundation.

Charles R. McKirdy and Brian W. Bulgar, of Pope, Ballard, Shepard & Fowle, of Chicago, for *amicus curiae* Midwest Industrial Management Association.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiff, Elouise Wilson, was employed by the defendant, All-Steel, Inc., as a final assembler in a manufacturing plant that produced metal furniture. After being so employed for slightly more than one month, she was discharged on July 6, 1977. The stated reasons for her termination were that she failed to obey company rules regarding the wearing of safety glasses, as well as her apparent inability to handle the physical requirements of the job. On August 17, 1977, Elouise Wilson, who is black, filed a charge with the Fair Employment Practices Commission (FEPC). The FEPC previously existed pursuant to the Fair Employment Practices Act (Ill. Rev. Stat. 1979, ch. 48, par. 851 *et seq.*).That statute has been repealed and replaced by the Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—101 *et seq.*), which incorporates substantially all of

the provisions previously found in the Fair Employment Practices Act. Plaintiff, in her charge filed with FEPC, alleged that her termination was both sexually and racially discriminatory.

On January 12, 1979, the FEPC issued a complaint in the cause and set the matter down for a hearing. Since the complaint was not issued within 180 days after the filing of the charge, as required by statute (Ill. Rev. Stat. 1977, ch. 48, par. 858.01), the defendant filed a motion to dismiss the complaint as untimely. This motion was denied, and following a hearing before a hearing examiner, a finding recommending certain relief was entered in favor of the plaintiff. On review, the full commission dismissed the complaint in response to recent decisions of this court holding that the 180-day period in which the Commission "shall * * * issue and serve a complaint" is mandatory. See *Board of Governors v. Illinois Fair Employment Practices Com.* (1979), 78 Ill. 2d 143; *Springfield-Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (1978), 71 Ill. 2d 61.

In 1978 the Illinois General Assembly amended the Fair Employment Practices Act to include section 8.01a (Ill. Rev. Stat. 1979, ch. 48, par. 858.01a). That section, which became effective on September 16, 1978, created a new cause of action for those persons whose claims had been barred by administrative delay. That section provided:

"In the case of any charge of an unfair employment practice which has been properly filed with the Commission prior to March 30, 1978, which has not been settled or adjusted by conference and conciliation under Section 8, and which within 180 days thereafter has not been the subject of a complaint issued by the Commission or an order that no complaint be issued, the person filing the charge may seek appropriate injunctive or other relief by filing an action in the circuit court of the county where the alleged unfair employment practice occurred, and if

the person prevails in such action the court may award such person costs and reasonable attorneys' fees. The Commission shall notify all such persons by registered mail of their right to seek such relief and any such action must be initiated in the circuit court within 2 years of the receipt of such notice, notwithstanding any other statute of limitations imposed on such actions." Ill. Rev. Stat. 1979, ch. 48, par. 858.01a.

The substance of this section is now found in the Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 9—102(B)). Elouise Wilson filed suit in the circuit court of Kane County alleging that she was a person acquiring a right of action under this section. The complaint prayed for relief almost identical to that originally recommended by the FEPC hearing examiner. The defendant challenged the constitutionality of section 8.01a by filing a motion to dismiss, which alleged that the effect of the statute was to deprive All-Steel of equal protection of the laws and to take its property without due process by reviving a previously barred cause of action in violation of the United States and Illinois constitutions. Further, the motion alleged that section 8.01a constituted prohibited special legislation under article IV, section 13, of the 1970 Constitution of Illinois. The Department of Human Rights (successor to the FEPC) was granted leave to intervene and filed several documents in support of the plaintiff's position opposing the defendant's motion. The trial court found section 8.01a "unconstitutional for the reasons submitted in defendant's motion" and entered an order dismissing the complaint. A direct appeal was taken to this court pursuant to Rule 302(a) (73 Ill. 2d R. 302(a)).

We hold that section 8.01a, currently section 9—102(B) of the Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 9—102(B)), constitutes prohibited special legislation and violates the equal protection and due process clauses of the Constitution of the State of Illinois.

In *Illinois Polygraph Society v. Pellicano* (1980), 83 Ill.

2d 130, the subtle distinctions between the concepts of equal protection and special legislation were discussed:

"Special legislation confers a special benefit or exclusive privilege on a person or a group of persons to the exclusion of others similarly situated. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109-110.) It arbitrarily, and without a sound, reasonable basis, discriminates *in favor of* a select group. Such legislation differs from 'local laws' because it is not limited to a geographical portion of the State. (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 109; G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 206 (1969).) Special legislation differs from a violation of equal protection in that the latter consists of arbitrary and invidious discrimination *against* a person or class of persons. It results from the governmental withholding of a right, privilege or benefit from a person or a class of persons without a reasonable basis (or, where a fundamental right or suspect classification is involved, a compelling State interest) for doing so. Whether a law is attacked as special legislation or as violative of equal protection, it is still the duty of the courts to decide whether the classification is unreasonable in that it preferentially and arbitrarily includes a class (special legislation) to the exclusion of all others, or improperly denies a benefit to a class (equal protection). (See *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315.) While certain pieces of legislation may be attacked as both special legislation and violative of equal protection since they confer a benefit on one class while denying a benefit to another, there will be many cases where a benefit is conferred on one class to which no other class has a right. In those cases, legislation would be attacked as special legislation but not as violative of equal protection." (Emphasis in original.) (*Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 137-38.)

In the case at bar, the defendant has raised and argued both a violation of our equal protection and special legislation

clauses. We note that section 8.01a creates a new and limited remedy where none previously existed. Also, it denies to the defendant herein certain defenses available to employers similarly situated against whom complaints were filed after March 30, 1978.

There can be no question but that the legislature has broad discretion in passing statutes designed to remedy what it perceives to be undesirable results reached under existing law. To this end, the General Assembly may make classifications and draw distinctions upon any rational basis. (*Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 425; *King v. Johnson* (1970), 47 Ill. 2d 247, 250; *Conlon Brothers Manufacturing Co. v. Annunzio* (1951), 409 Ill. 277, 285; *Bowers v. Glos* (1931), 346 Ill. 623, 630-31.) These classifications will be upheld so long as they do not violate constitutional guarantees. Prior to the adoption of the 1970 Constitution, this court's review of legislative action in most cases of "special legislation" was limited to a comparison of the enactment in question with the constitutional list of prohibited areas in which the legislature could not act specially. (See *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 312-14; Ill. Const. 1870, art. IV, § 22.) However, under the 1970 Constitution, the General Assembly is placed under a duty to pass only general laws, wherever possible, and the task of deciding whether this duty has been discharged is specifically designated as a matter for judicial determination. (Ill. Const. 1970, art. IV, § 13.) Although our courts may now be viewed as possessing a much wider range of review over legislative enactments, the standard to be applied has not been altered. (*S. Bloom, Inc. v. Mahin* (1975), 61 Ill. 2d 70, 76-77; *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 110.) Our court has held that the special legislation section of the Illinois Constitution allows differential treatment among similarly situated persons if the classification made bears a rational relationship to a legitimate legislative purpose. *Illinois Housing Development Authority v. Van Meter*

(1980), 82 Ill. 2d 116, 124; *Anderson v. Wagner* (1979), 79 Ill. 2d 295, 315; *Youhas v. Ice* (1974), 56 Ill. 2d 497, 500; *People ex rel. City of Salem v. McMackin* (1972), 53 Ill. 2d 347, 363-64; *Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 111.

In the case at bar, the evil sought to be cured by section 8.01a (Ill. Rev. Stat. 1979, ch. 48, par. 858.01a) arises from the fact that the 180-day provision of section 8.01 (Ill. Rev. Stat. 1977, ch. 48, par. 858.01) has been held to be a mandatory requirement which must be complied with and that no complaint can be issued by the FEPC beyond the specified period (*Springfield-Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (1978), 71 Ill. 2d 61). Claimants under the Act might therefore lose their right to recover due to administrative delay. In *Springfield-Sangamon County,* the 180-day period was likened to a statute of limitations in its effect, and it was held that the running of the period deprived the Commission of the power to act on the claim. (*Springfield-Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (1978), 71 Ill. 2d 61, 68-69.) The reason for holding this period mandatory rather than directory was that the court recognized an employer has a right to an expeditious determination of his liability under the Act. Periods of inactivity on behalf of the FEPC would tend to hamper the remedial and reconciliatory procedures which underlie the very purpose of the Fair Employment Practices Act. The statutory time period, chosen by the legislature, seeks to balance the rights of an aggrieved individual who has suffered supposed discrimination against the rights of those charged under the Act to have a prompt determination of the validity of the claim lodged against them. Because section 8.01a of the 1979 act operates to circumvent the 180-day period and consequently the purpose which it serves, there must exist a rational basis for the classification which creates a cause of action in favor of those who filed charges with the FEPC prior to March 30, 1978, and whose

rights under the Act were lost because of administrative delay. Prior to March 30, 1978, the Fair Employment Practices Act provided:

"Whenever such a charge of an unfair employment practice has been properly filed, the Commission, within 180 days thereof or within any extension of that 180 day period agreed to in writing by all parties and approved by a member of the Commission, shall either issue and serve a complaint in the manner and form set forth in this Section or shall order that no complaint be issued. Any such order shall be duly served upon both the complainant and the respondent." (Ill. Rev. Stat. 1977, ch. 48, par. 858.01(a).)

Public Act 80—1452, effective September 16, 1978, removed this requirement from section 8.01 of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 858.01) and inserted its provisions in section 8(d) of the Act, rephrasing it to read:

"The Commission shall, within 180 days after the expiration of the 120 day period specified in paragraph (b), * * * either issue and serve a complaint * * * or shall order that no complaint be issued." (Ill. Rev. Stat. 1979, ch. 48, par. 858(d).)

The 120-day period specified in paragraph (b) related to the Commission convening a fact-finding conference within 120 days of the filing of the charge. Thus, after September 16, 1978, the effective date of Public Act 80—1452, the Commission had 300 days; 120 days provided in paragraph (b), plus 180 days provided in paragraph (d), or an extension thereof, as provided in the Act, within which to file a complaint. These provisions were repealed effective July 1, 1980, by Public Act 80—1216 and their subjects incorporated in the Illinois Human Rights Act. After July 1, 1980, the time limit provisions of the Illinois Human Rights Act provided:

"When a charge of a civil rights violation has been properly filed, the Department, within 300 days thereof or within any extension of that period agreed to in writing by all parties, shall either issue and file a

complaint in the manner and form set forth in this Section or shall order that no complaint be issued. Any such order shall be duly served upon both the complainant and the respondent." (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 7—102(G).)

Under the provisions of the Illinois Human Rights Act, the Department has 300 days after the charge is filed to file a complaint against the employer, as the Commission did under the Fair Employment Practices Act after its amendment effective September 16, 1978.

In summary, before March 30, 1978, and after that date until September 16, 1978, an employee would lose the rights provided in the Fair Employment Practices Act if the Commission did not file a complaint within 180 days, or an extension thereof, as provided in the Act, after the employee filed a charge of unfair labor practices. After September 16, 1978, the employee would lose those rights if no complaint was filed within 300 days of the date the employee filed the charge. However, by virtue of section 8.01a of the Fair Employment Practices Act (Ill. Rev. Stat. 1979, ch. 48, par. 858.01a), now section 9—102(B) of the Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 9—102(B)), only those employees who had filed their charges prior to March 30, 1978, and whose claims were barred because of inaction by the Commission during the 180-day period prescribed in the Act can file an action in the circuit court. Those employees whose claims were filed after March 30, 1978, and which are subsequently barred due to administrative delay have no right to maintain an action in the circuit court. It is true that, due to the subsequent amendment, claims will not be barred until 300 days instead of 180 days after the charge is filed; however, the Commission did not file its complaint in plaintiff's case until after 17 months after the plaintiff had filed her charge with the Commission. A similar delay in case of a charge filed after the effective date of the amendments would bar the filing of the complaint, and the aggrieved

employee would not have a right to maintain a cause of action in the circuit court.

Article IV, section 13, of our constitution provides:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, § 13.)

We have not been informed of any sound basis, in reason or principle, for creating a cause of action for those whose claims have been filed before March 30, 1978, and barred by lapse of time and not similarly favoring those whose claims were filed after March 30, 1978, and have been barred by lapse of time. A general law giving to all whose claims under the acts have been barred a right to maintain an action in the circuit court could have been made applicable, and would have provided the relief apparently thought desirable, to people who are in the plaintiff's class, as well as to those whose charges were filed after March 30, 1978.

In *Skinner v. Anderson* (1967), 38 Ill. 2d 455, this court held invalid section 29 of the Limitations Act (Ill. Rev. Stat. 1965, ch. 83, par. 24f), which purported to immunize architects and contractors from liability upon causes of action that did not accrue within four years of performance of their services. After noting that the statute need only be reasonably related to the legislative purpose, the court further commented that "where that relationship was nonexistent the statute has been held to contravene the constitutional provision [against special legislation]. [Citations.]" (*Skinner v. Anderson* (1967), 38 Ill. 2d 455, 460.) The court also stated:

" 'That the statute operates uniformly upon all members of a class created as the beneficiaries of the act is not the sole test to be applied, but in order to avoid the constitutional inhibition *** *it must also appear that there is a sound basis, in reason and principle, for regarding the class of individuals as a distinct and*

*separate class for the purpose of the particular legisla-tion.'* [Citation.]" (Emphasis added.) *Skinner v. Ander-son* (1967), 38 Ill. 2d 455, 461.

The converse of the above involves the effect of section 8.01a of the Fair Employment Practices Act on an employer. Those against whom a complaint was filed before March 30, 1978, may be required to defend an action in the circuit court even though the claim against them under the Act has been barred. This is true no matter how many years before March 30, 1978, the charge may have been filed, because the statute creating the cause of action does so "notwithstanding any other statute of limitations imposed on such actions." (Ill. Rev. Stat. 1979, ch. 48, par. 858.01a.) As to those employers against whom a charge is filed after March 30, 1978, no complaint against them can be filed in the circuit court at any time. Applying the rationale of *Board of Governors v. Illinois Fair Employment Practices Com.* (1979), 78 Ill. 2d 143, and *Springfield-Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (1978), 71 Ill. 2d 61, if no administrative action is taken within 300 days from the date of the filing of the charge, the employer would be protected from any further claim arising out of the alleged unfair practice. There does not appear to be a rational basis for subjecting one employer to an open-end type of liability, whereas an employer against whom a charge is filed after March 30, 1978, remains subject to liability for the same type of conduct for no more than 480 days. (The charge must be filed by the employee with the Commission within 180 days of the unfair practices, and the complaint must be filed by the Commission within 300 days after the charge is filed.) (Ill. Rev. Stat. 1979, ch. 48, pars. 858(a), (b), (d).) Those employers against whom a charge was filed before March 30, 1978, are, by the provisions of this Act, denied equal protection of the law.

We also hold that section 8.01a violates the defendant's due process rights by attempting to revive a previously

barred cause of action. In *Campbell v. Holt* (1885), 115 U.S. 620, 29 L. Ed. 483, 6 S. Ct. 209, the United States Supreme Court held that where a statute of limitations runs to bar a remedy but does not operate to affect the right, a defendant acquires no vested interest in the running of the period so that a subsequent legislative enactment which removes the bar does not deprive him of due process under the Federal Constitution. The distinction made by the court in *Holt* was based upon the fact that where a statute runs against land or personal property, as in the case of adverse possession, the right and title to the property itself is lost in favor of the defendant. However, where a procedural bar is imposed against pursuit of an otherwise valid claim, the running of a limitations period leaves the underlying right intact. The reasoning of *Holt* was expressly rejected by this court in *Board of Education v. Blodgett* (1895), 155 Ill. 441. In *Blodgett,* this court recognized that "[t]he immunity from suit which arises by operation of the Statute of Limitations is as valuable a right as the right to bring the suit itself. It is a right founded upon a wise and just policy. Statutes of limitation are not only calculated for the repose and peace of society, but to provide against the evils that arise from loss of evidence and the failing memory of witnesses. It is true that a man may plead the statute when he justly owes the debt for which he is sued; and this has led the courts to adopt strict rules of pleading and proof to be observed when the defense of the statute is interposed. But it is, nevertheless, a right given by a just and politic law, and, when vested, is as much to be protected as any other right that a man has." (155 Ill. 441, 449-50.) *Blodgett* has consistently been cited with approval by this court in subsequent decisions. (*Wilson-Raymond Constructors Co. v. Industrial Com.* (1980), 79 Ill. 2d 45, 53; *Arnold Engineering Inc. v. Industrial Com.* (1978), 72 Ill. 2d 161, 163; *Country Mutual Insurance Co. v. Knight* (1968), 40 Ill. 2d 423, 428; *People v. Lansing* (1966), 35 Ill. 2d 247, 250; *Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 187; *People*

*ex rel. Endicott v. Prather* (1931), 343 Ill. 443, 448.) The proposition that a limitations defense which has fully accrued vests a property right in the defendant entitled to due process protection is a general rule followed by many jurisdictions. See Annot., 79 A.L.R.2d 1080, 1082-90 (1961); Annot., 46 A.L.R. 1101 (1927); Annot., 36 A.L.R. 1316 (1925); 51 Am. Jur. 2d *Limitations of Actions* § 28, at 612, § 44, at 624-26 (1970).

In the instant case, although the mandatory provision of section 8.01 has not been labeled a statute of limitations, it most certainly operates as such in favor of the defendant once the period has run. Moreover, as we have previously discussed at length, the 180-day requirement was included in section 8.01 for the specific purpose of conferring a benefit upon a person charged under the Fair Employment Practices Act. Under these circumstances, there can be no doubt that once the period had run in this case, All-Steel acquired a vested right which the legislature could not thereafter take away consistent with article I, section 2, of the 1970 Constitution of the State of Illinois.

For the above reasons, the judgment of the circuit court of Kane County is affirmed.

*Judgment affirmed.*