Roy BENNETT and Hattie Cunningham, on their own behalf and on behalf of all those similarly situated, Plaintiffs,

v.

Joyce E. TUCKER, Individually and in her capacity as Director of the Illinois Department of Human Rights, Defendant.

No. 83 C 480.

United States District Court, N.D. Illinois, E.D.

May 8, 1986.

Gary H. Palm, Lori Irish, Jack M. Beermann, Edwin F. Mandel Legal Aid Clinic, Chicago, Ill., for plaintiffs.

Frona C. Daska, Jeffrey W. Finke, Illinois Atty. Gen.'s Office, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

DUFF, District Judge.

Plaintiffs Roy Bennett ("Bennett") and Hattie Cunningham ("Cunningham") allege that the Illinois Department of Human Rights ("DHR") and its predecessor, the Illinois Fair Employment Practices Commission ("FEPC")[1] violated their due process and equal protection rights by refusing to investigate the claims they filed with the FEPC in 1976 and 1977. In their complaint, plaintiffs ask this court to allow a class action on behalf of all persons who filed claims with the FEPC prior to September 16, 1978, and whose claims were never investigated. There are approximately 2500 such persons. Plaintiffs also ask this court to declare that their fourteenth amendment rights have been violated and to direct the DHR "to investigate and act upon the plaintiffs' charges."

## FACTS AND BACKGROUND

Plaintiff Roy Bennett filed his claim with the FEPC on August 3, 1976, alleging an unfair employment practice which occurred on December 8, 1975. Under the Fair Employment Practices Act ("FEPA"), 48 Ill. Rev.Stat. § 858(a), in effect at the time of his filing, Bennett was required to file his FEPC complaint within 120 days after the date of the unfair employment practice. It is undisputed that Bennett's claim was untimely.

Plaintiff Hattie Cunningham filed her FEPC claim on February 3, 1977, alleging that in December 1976, she applied for the position of social worker. She went on to

---

1. On July 1, 1980, the Illinois Human Rights Act, 68 Ill.Rev.Stat. ¶ 1–101 et seq., became effective, replacing the Fair Employment Practices Act ("FEPA") which was repealed. By the same Act, the Fair Employment Practices Commission ("FEPC") was replaced by the Illinois Department of Human Rights ("DHR").

allege that her employer, Ingall Memorial Hospital, denied her this promotion because of her race. At that time, the FEPA required the Commission to issue a complaint, or to order that no complaint will issue, within 180 days, 48 Ill.Rev.Stat. § 858(c). On January 20, 1978, the Illinois Supreme Court held that the 180 day requirement was mandatory. *Springfield-Sangamon County Regional Plan Commission v. The Fair Employment Practices Commission*, 71 Ill.2d 61, 15 Ill.Dec. 623, 373 N.E.2d 1307 (1978). The court later held that after 180 days, the FEPC had no authority to issue a complaint in *Board of Governors v. The Fair Employment Practices Commission*, 78 Ill.2d 143, 35 Ill.Dec. 524, 399 N.E.2d 590 (1979).

After the *Springfield-Sangamon* case, the Illinois legislature amended the FEPA to provide that where the Commission had not acted within 180 days, the claimant could seek injunctive or other relief in state court.[2]

On June 6, 1979, the FEPC wrote plaintiff to notify her of these developments. The FEPC informed Cunningham that the Illinois Supreme Court had decided that the FEPC must act within 180 days, and that it was "uncertain what the consequences of this decision [would] be." The letter went on: "It *may* mean that the Commission will have to dismiss your charge. (Emphasis in original.)" The Commission informed plaintiff that it might be more than a year before it would work on her claim and asked her to sign an attached form if she wished the FEPC to investigate her charge, which she did. The letter also informed Cunningham of the law which gave a state court remedy to those whose claims had not been acted on within 180 days.

On June 26, 1979, the FEPC again wrote to Cunningham to inform her of this right to proceed in state court. Plaintiff never filed suit in state court. She cannot be faulted for her failure to pursue this remedy, however, since the Illinois Supreme Court held it to be unconstitutional in *Wil-*

*son v. All-Steel, Inc.*, 87 Ill.2d 28, 56 Ill. Dec. 897, 428 N.E.2d 489 (1981).

Claims pending before the FEPC on July 1, 1980, were transferred to the newly created Department of Human Rights ("DHR"). Those claims which had been pending longer than 180 days were not transferred because the Commission believed that such claims were extinguished by *Springfield-Sangamon* and *Board of Governors*. On September 17, 1980, the FEPC wrote to Cunningham and informed her that it had closed her file and that it would "conduct no further proceedings thereon."

Plaintiff did nothing further to pursue her claim until she filed this action on January 23, 1983.

## DISCUSSION

In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) the Supreme Court held that another FEPC claimant was denied due process where his claim was dismissed because the FEPC scheduled a hearing on his claim five days beyond the statutory 120 day period for the holding of such a hearing. The Court held that the claimant had a property interest in his FEPC action and that under the due process clause of the fourteenth amendment he was entitled to have the FEPC "consider the merits of his charge, based upon the substantiality of the available evidence, before deciding whether to terminate his claim." 455 U.S. at 434, 102 S.Ct. at 1157.

The Court upheld the claimant's due process rights against the state's interest which it characterized as "insubstantial". In *Logan*, a single claimant sought a hearing on his claim of an unfair employment practice which occurred three years before the Supreme Court decision. If this court were to grant Cunningham's request, the DHR would have to go back ten years to investigate why Ingall Memorial Hospital, plaintiff's employer at the time, denied plaintiff's application for the position of

---

2. 48 Ill.Rev.Stat. 858.01(a), found in the Illinois Human Rights Act at 68 Ill.Rev.Stat. ¶ 9–102(B).

social worker. The state's interest in conducting such an investigation on 2500 claims is not "insubstantial".

In *Logan*, the Court stated that:

There has been no suggestion that any great number of claimants are in Logan's position, or that directing the State to consider the merits of Logan's claim will be unduly burdensome.

455 U.S. at 435, 102 S.Ct. at 1157. Requiring the DHR to investigate the 2500 claims filed before 1978 would be unduly burdensome. It would be difficult for the DHR to locate all the claimants, much less to locate former employers and witnesses. And, if these persons could be located, it is highly unlikely that they could present such facts as would allow a hearing officer to determine whether or not an unfair employment practice was perpetrated against the claimant in the 1970s. When these uncertainties and vagaries are multiplied by 2500 claims, the burden on the state of Illinois is indeed onerous.

Plaintiff asks the court to impose this burden on behalf of a claimant whose only action in pursuit of her claim, after she filed her complaint with the FEPC in February 1977, was to check a form in 1979 indicating that she wished the FEPC to investigate her claim.

The inequity of plaintiff's request is proscribed by the doctrine of laches. Plaintiff filed this action within the five year limitation period for § 1983 actions. *Anton v. Lehpamer*, 787 F.2d 1141, 1145–46 (7th Cir. 1986). The doctrine of laches may, however, be used to shorten the time period for filing an equitable action where, as here, a legal remedy is barred by the eleventh amendment. *Cannon v. University of Health Sciences/The Chicago Medical School*, 710 F.2d 351, 357–59 (7th Cir.1983).

In *Lingenfelter v. Keystone Consolidated Industries, Inc.*, 691 F.2d 339, 340 (7th Cir.1982), the court discussed the doctrine of laches as follows:

Laches is principally a question of the inequity of permitting a claim to be enforced. It is unlike limitation, which is based merely on time. Rather, laches is based upon changes of conditions or relationships involved with the claim.... In order to support a defense of laches, there must be a showing of both a lack of due diligence by the party against whom the defense is asserted and prejudice to the defending party. [Citations omitted]

The court went on to say that "under the two-prong test for laches the plaintiff bears the burden of explaining his delay in bringing suit." In *Cannon*, 710 F.2d at 359–60, the court stated that lack of diligence is established if plaintiff's delay is both unreasonable and inexcusable. The court found that a three year, eight month delay in bringing suit was unreasonable. The court also found that plaintiff's attempt to secure administrative resolution of her claim did not excuse her delay. The court stated that where an administrative agency failed to act on claims filed in 1975 and 1976, the claimant should have known in 1979 that no administrative resolution was imminent.

In June 1979, the FEPC informed plaintiff Cunningham that the agency might dismiss her claim even though there had never been a hearing on the matter. If the action was not dismissed, the FEPC told Cunningham, it would be at least a year before her claim would be investigated. At the same time, the FEPC told Cunningham that she could proceed in state court instead of leaving her claim with the FEPC. Defendant argues that laches should bar Cunningham's claim because she failed to pursue the state court remedy which was declared unconstitutional in *Wilson v. All-Steel, Inc.*, 87 Ill.2d 28, 56 Ill.Dec. 897, 428 N.E.2d 489 (1981).[3]

---

3. Judge Kocoras, who was previously assigned to this case, rejected this argument in his Memorandum Order denying defendant's motion to dismiss. This court agrees with Judge Kocoras that plaintiff should not have been expected to pursue a remedy ultimately determined to be unconstitutional. Due to defendant's failure to properly frame her laches argument, however, it appears that Judge Kocoras did not consider plaintiff's delay in bringing this action, separate

While it is difficult to understand why plaintiff did not proceed in court when it became clear in 1979 that if the FEPC acted at all, it would only be after a great deal of delay. Nonetheless the court does not fault Cunningham for her lack of action before September 17, 1980. On that date the FEPC told Cunningham that it would take no action on her claim and that her file was closed. Whatever her expectations might have been prior to receiving this notice, it was unreasonable and inexcusable for her to wait over two years after the FEPC finally dismissed her case before filing this action in federal court.

Plaintiff has not explained why she delayed in bringing this suit for two years and four months after she was told that the FEPC would not act on her claim. The FEPC's failure to act on claims made in the 1970s is of course reproachable. This does not, however, excuse Cunningham's failure to promptly file suit after she was told that the FEPC would take no action.

In addition to lack of diligence by the plaintiff, laches also requires a showing of prejudice to the defendant. The failure to bring this claim in a timely fashion prejudices the defendant's ability to investigate the claims made in the 1970s. As stated earlier, if the court grants the relief requested, the DHR would be required to investigate 2500 claims which are over eight years old. Plaintiff has contributed to the difficulty of this task by adding two years and four months to the already stale claims. Obviously, the staleness of these claims is also due to the conduct of the defendant. Nonetheless, the added burden which has resulted from plaintiff's delay is sufficiently prejudicial to the defendant to warrant the application of the equitable doctrine of laches.

This court has carefully weighed the equities of this case. Plaintiff Cunningham and many others were denied their constitutional rights when they filed their claims and those claims were not investigated because the FEPC/DHR was never given adequate appropriations to do their job prop-

erly. The court has also considered the inequity of ordering employers to explain employment decisions made a decade ago. Also in the balance are Illinois taxpayers who would no doubt be burdened if this court were to order the investigation of 2500 claims which were filed in the 1970s. In this context, plaintiff's delay in bringing this action warrants the application of the doctrine of laches.

For these reasons, summary judgment is granted in favor of the defendant and against the plaintiff.

IT IS SO ORDERED.

and apart from her refusal to proceed with the state court claim. It is Cunningham's failure to

promptly file this federal action which is the basis for today's ruling.