**Roy BENNETT and Hattie Cunningham, on their own behalf and an behalf of all those similarly situated, Plaintiffs,**

**v.**

**Joyce E. TUCKER, individually and in her capacity as Director of the Illinois Department of Human Rights, Defendant.**

**No. 83 C 480.**

United States District Court, N.D. Illinois, E.D.

Aug. 17, 1989.

Gary H. Palm, Lori Irish, Jack M. Beermann, Jonathan K. Baum and Mark Klaiman, Edwin F. Mandel Legal Aid Clinic, Chicago, Ill., for plaintiffs.

Frona C. Daska and Jeffrey W. Finke, Illinois Atty. General's Office, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

In a series of three separate rulings, the Illinois Supreme Court held that anyone who had filed a complaint against an employer with the Illinois Fair Employment Practices Commission prior to September 16, 1978, and whose charge had not been processed by the FEPC within 180 days, lost his right to have his case pursued by the FEPC because the expiration of the 180–day period served as a jurisdictional bar to the FEPC's power. *See* Illinois Fair Employment Practices Act, Ill.Rev.Stat. 1977 ch. 48, § 858.01(a); *Springfield–Sangamon County Regional Planning Comm'n v. Fair Employment Practices Commission*, 71 Ill.2d 61, 15 Ill.Dec. 623, 373 N.E.2d 1307 (1978); *Board of Governors of States Colleges and Universities for Chicago State University v. Illinois Fair Employment Practices Commission*, 78 Ill.2d 143, 35 Ill.Dec. 524, 399 N.E.2d 590 (1979); *appeal dismissed sub nom., Zackai v. Board of Governors of States Colleges and Universities for Chicago State University*, 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980); *Wilson v. All–Steel, Inc.*, 87 Ill.2d 28, 56 Ill.Dec. 897, 428 N.E.2d 489 (1981). In *Zimmerman Brush Co. v. Fair Employment Practices Commission*, 82 Ill.2d 99, 44 Ill.Dec. 308, 411 N.E.2d 277 (1980), the Illinois Supreme Court applied the analyses of those three cases in ruling that the FEPC's failure to hold a fact-finding conference within 120 days of the filing of a complaint also served as a jurisdictional bar to FEPC power. *See* FEPA, Ill.Rev.Stat.1979 ch. 48, ¶ 858(b). In *Logan v. Zimmerman*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the United States Supreme Court reversed the latter ruling. It held that, because the jurisdictional bar deprived the complainant of any mechanism for enforcing his rights under the FEPA, the bar deprived the complainant of due process of law.

Reasoning that what the Supreme Court held in *Logan* applied as well to the 180–day jurisdictional bar established in the earlier trilogy, plaintiffs Roy Bennett and Hattie Cunningham brought this 42 U.S.C. § 1983 lawsuit as a class action on behalf of all persons who had filed charges with the FEPC before September 16, 1978 (the date the Illinois legislature amended ¶ 858.01(a)'s 180–day jurisdictional bar) and for whom the FEPC had failed to act with-

in the 180–day period. The plaintiffs sued Joyce E. Tucker, Director of the Illinois Department of Human Rights (the successor agency to the FEPC), seeking an injunction ordering her to reopen all of the cases which had been administratively closed pursuant to the Illinois Supreme Court's rulings. Without certifying the class, this court granted summary judgment against these two plaintiffs on grounds peculiar to them. *Bennett v. Tucker*, 634 F.Supp. 355 (N.D.Ill.1986).

On appeal, the Seventh Circuit first noted that there was some question as to the finality of this court's order in light of this court's failure to address the class certification issue. *Bennett v. Tucker*, 827 F.2d 63, 67 (7th Cir.1987). The Court of Appeals determined that the omission must have resulted from this court's mistaken belief that the judge from whom the case had been transferred already had certified the class. *Id.* Because "the named plaintiffs in this case seem fully representative of the class, thereby removing any basis for believing that the district court may have deliberately deferred certification," *id.,* the Court decided to treat the case as if this court had certified the plaintiff class, and to assume appellate jurisdiction. *Id.* The Court then reversed this court's grant of summary judgment as to both named plaintiffs. *Id.* at 73.

On remand to this court, the plaintiffs quite properly have moved for a formal order certifying the class pursuant to Fed. R.Civ.P. 23. The defendant, noting that the Seventh Circuit stated only that the proposed class looked like a class and smelled like a class, not that it was a class, has raised three new grounds for not certifying the class proposed by the plaintiffs. This court hesitates to question the Seventh Circuit's considered judgment that this court should have certified this class. Yet, the magnitude of this case, and the Seventh Circuit's presumably deliberate decision not to order certification, compels this court to address the defendant's specific arguments against certification.

## DISCUSSION

### The Vergil Class Action

The defendant first argues that this court should deny certification of the proposed class because, contrary to the mandates of Rule 23(b)(2), the defendant's grounds for refusing to pursue the FEPA cases differ between two groups of defendants. Specifically, the defendant contends that those plaintiffs who filed charges prior to March 30, 1978 are barred from relying on *Logan* by their failure to appeal or otherwise pursue an earlier class action in which they were parties, *Vergil v. Illinois Fair Employment Practices Commission*, No. 78 L 13044 (Cook County, Illinois, Circuit Court). This argument requires a digression to the history of the instant litigation.

On March 30, 1978, the Illinois Supreme Court issued *Springfield–Sangamon*. That case held that the FEPC could not proceed on an employee's complaint against an employer because the agency had not complied with FEPA time limitations, and because the employer was prejudiced by the FEPC's delay. 71 Ill.2d at 73, 15 Ill. Dec. 623, 373 N.E.2d 1307. Two weeks later, the FEPC adopted an "Interim Policy Regarding 'Backlogged' Charges," which provided in part as follows:

> For charges in which complaints have not been issued within 180 days, the following policies have been adopted as of this date:
>
> I. Uninvestigated Charges
>
> Charges which have not been assigned for investigation or in which the investigation is not completed shall be placed on a deferred status. Further investigation will be suspended indefinitely. The Commission will attempt to contact the complainants, advise them of this policy, and determine whether they wish to keep their cases pending.

Two individuals whose charges had been placed on deferred status subsequently filed a class action against the FEPC's interim policy in Illinois circuit court. They alleged that the FEPC's policy violated their rights under the FEPA, and sought a declaration to this effect. On August 25,

1978, Judge Curry certified a class consisting of:

> All persons who properly filed charges with the FEPC before March 30, 1978 and the FEPC has not completed investigation of the charge and either (1) dismissed the charge for lack of substantial evidence; (2) issued and served a complaint thereon; or (3) entered an order that no complaint be issued within 180 days, except where said person entered an agreement, as provided by the FEPA, extending the time for such action.

*Vergil*, No. 78 L 13044 (Order, August 25, 1978). On October 31, 1978, Judge Curry granted summary judgment for the plaintiff class and entered a peremptory writ of mandamus declaring the FEPC's interim policy unlawful and invalid, and ordering the FEPC to process all "charges properly filed by persons in Plaintiff Class." *Vergil*, No. 78 L 13044 (Order, October 31, 1978).

No one appealed this ruling, but its impact was short-lived. On November 21, 1979, in a different case, the Illinois Supreme Court held that the FEPA's 180-day time limit for the FEPC to file a complaint against an employer was mandatory, and that, contrary to the suggestion in *Springfield-Sangamon*, it barred the FEPC from proceeding after the expiration of the period regardless of any prejudice to the employer. *Board of Governors v. Illinois Fair Employment Practices Commission*, 78 Ill.2d 143, 35 Ill.Dec. 524, 399 N.E.2d 590 (1979). The employee whose charge was barred by the Illinois Supreme Court's ruling appealed to the United States Supreme Court on the identical grounds that later prevailed in *Logan*, but the high court was not yet ready to consider these challenges, and dismissed the appeal "for want of a properly presented federal question." *Zackai v. Board of Governors*, 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980).[1]

Although *Board of Governors* was not a class action, and therefore technically was not binding on the *Vergil* class, the FEPC took the import of the Illinois Supreme Court's ruling to heart, and thereafter terminated proceedings on—i.e., administratively closed—any cases in which a complaint against an employer had not been filed within 180 days of the employee's charge. The *Vergil* class, no doubt assuming that *Board of Governors* vitiated its victory by implication, *see Lott v. Governors State University*, 106 Ill.App.3d 851, 853–54, 62 Ill.Dec. 543, 436 N.E.2d 569 (1982), took no further action to enforce the trial court's judgment. After the United States Supreme Court issued *Logan*, however, a portion of that class—those class members encompassed within subcategory (c) of the certified class—joined with people who had lost FEPA claims filed after the class's March 30 certification date to bring the instant lawsuit. The defendant argues that the *Vergil* class members have no business being here because their claims are barred by both the *Rooker–Feldmen* doctrine and principles of res judicata.

### 1. *Rooker–Feldman*

█ Long ago, the Supreme Court opined, and recently it reiterated, that "United States District Court[s] [are] without authority to review final determinations of [state courts] in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415, 416, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923)). A party dissatisfied with the procedures or outcome of a state litigation must raise any federal objections by appealing or petitioning for certiorari to the United States Supreme Court. *Feldman*, 460 U.S. at 476, 103 S.Ct. at 1311. He may

---

1. The defendant briefly attempts to undermine the adequacy of plaintiffs' counsel, Gary Palm of the Edwin F. Mandel Legal Aid Clinic, by noting that it was he who submitted the unsuccessful appeal to the United States Supreme Court in *Board of Governors*. This argument is unworthy. Mr. Palm's brief in *Board of Governors* was a well-reasoned and well-written analysis of the federal issues implicated by the Illinois Supreme Court's ruling, and included all of the elements the United States Supreme Court ultimately found persuasive in *Logan* (a case Mr. Palm argued). Mr. Palm and his students will serve as a more-than-adequate legal representatives of the plaintiff class.

not do so by bringing an original action under 42 U.S.C. § 1983 (or any other federal statute) in the federal district courts. *See Anderson v. State of Colorado,* 793 F.2d 262, 263 (10th Cir.1986); *Alcan Aluminum Corp. v. Lyntel Products, Inc.,* 656 F.Supp. 1138, 1139 (N.D.Ill.1987).

The defendant contends that the *Vergil* class members are violating this rule by this litigation. According to the defendant, these plaintiffs should have challenged *Vergil* through the Illinois appellate courts and, if necessary, to the United States Supreme Court (as did the plaintiff in *Logan* ); they may not, the defendant insists, challenge the *Vergil* court's ruling on due process grounds here.

The defendant may be correct that the plaintiff in *Logan* could not have brought an original action in federal district court after the Illinois Supreme Court ruled that the FEPC lacked jurisdiction to pursue her claim. *See Zimmerman Brush Co. v. Fair Employment Practices Commission,* 82 Ill.2d 99, 44 Ill.Dec. 308, 411 N.E.2d 277 (1980). There, it (arguably) was the Illinois Supreme Court's ruling which had deprived Ms. Logan of her federal constitutional rights, and the proper court to review such a deprivation was the United States Supreme Court. *See* 28 U.S.C. § 1257.

The *Vergil* plaintiffs, however, are not challenging the *Vergil* court's ruling. On the contrary, they were perfectly content with that ruling. Of course, they are challenging the Illinois Supreme Court's subsequent rulings effectively overruling *Vergil,* but the *Rooker–Feldman* doctrine clearly does not prohibit a person from challenging in federal district court a state high court's construction of a state statute in a different case. *Cf. Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317. What the defendant is really saying is that the *Vergil* plaintiffs should not be allowed to pursue against her, at least in this court, claims relating to the same issues addressed in *Vergil*—in other words, that the *Vergil* plaintiffs are barred by res judicata.

## 2. *Res Judicata*

■ In *Vergil,* the plaintiff class alleged, and the trial court found, that the FEPC

was violating the plaintiffs' statutory rights by refusing to process charges that were more than 180 days old. The plaintiffs did not allege that the placement of their charges on deferred status violated their federal due process rights, but the defendant here says that they could have, and that because they could have they may not do so here. Though the defendant fails to say as much, its argument rests on Illinois principles of res judicata. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *Wozniak v. DuPage County,* 845 F.2d 677, 680 (7th Cir.1988).

Illinois res judicata law precludes subsequent litigation between parties or their privies on all "questions which were actually litigated [in a prior lawsuit] ... [and on] all questions which could have been raised or determined." *Spiller v. Continental Tube Co.,* 95 Ill.2d 423, 432, 69 Ill.Dec. 399, 447 N.E.2d 834 (1983). Thus, the defendant maintains that the only issue here is whether the *Vergil* plaintiffs could have brought a due process claim; because they could have done so, the defendant argues, they are barred from bringing one now. This argument contains two flaws.

First, it is not at all clear that the *Vergil* plaintiffs could have brought a due process claim back in 1978. True, the FEPC had decided to put old claims on deferred status and to suspend further investigation indefinitely. But indefinite extension does not mean termination; the FEPC said as much in planning to inquire into whether claimants wanted to keep their cases open. A reasonable delay does not violate due process, *I.N.S. v. Pangilinan,* 486 U.S. 875, 108 S.Ct. 2210, 2216–17, 100 L.Ed.2d 882 (1988); for all the plaintiffs knew when they filed their lawsuit in 1978, only a reasonable delay was in store.

Indeed, the Seventh Circuit already has indicated, albeit in a different context, that the plaintiffs did not have a due process claim in 1978. In reversing this court's ruling that the now-deceased Ms. Cunningham was barred by laches because she had

waited until 1983 to bring this case, the Seventh Circuit held that Ms. Cunningham could not have been expected to file suit until her case was finally closed in 1980, and until the Supreme Court subsequently ruled in *Logan* that a similar closing violated due process. *Bennett v. Tucker,* 827 F.2d at 69.

Yet, even if the *Vergil* plaintiffs could have brought a due process claim, this fact does not bar them from bringing one now. "The rule in Illinois is that *res judicata* extends only to the facts and conditions as they were at the time a judgment was rendered. When new facts or conditions intervene before a second action, establishing a new basis for the claims and defenses of the parties ..., the issues are no longer the same, and the former judgment cannot be pleaded as a bar in a subsequent action." *Northern Illinois Medical Center v. Home State Bank,* 136 Ill.App.3d 129, 144, 90 Ill.Dec. 802, 482 N.E.2d 1085 (1985). The plaintiffs may have had a due process claim in 1978, but the specific due process claim alleged here did not arise until 1980, when the FEPC administratively closed their cases. Res judicata prevents a party from asserting the same facts under a different theory in a second lawsuit; it does not preclude a party from asserting the same legal theory on new and different facts.[2] The *Vergil* plaintiffs therefore are not barred from participating in the instant lawsuit. Because they are not, the defendant will have the same defenses as to them as she does against the other members of the class. Rule 23(b)(2) does not prevent class certification here.

**2.** *Zackai v. Board of Governors (Zackai II),* 118 Ill.App.3d 1161, 83 Ill.Dec. 534, 470 N.E.2d 660 (1983), an unpublished case relied on by the defendant in another portion of her brief, weakens her res judicata argument. Mr. Zackai was a member of the *Vergil* class and was also the losing party in the first *Board of Governors* case—the case establishing ¶ 858.01(a) as a jurisdictional bar. In *Zackai II,* the appellate court held that Mr. Zackai could assert a federal due process challenge to the FEPC's administrative closing of his FEPA case, and ordered the Illinois Department of Human Rights—the successor to the FEPC (Ill.Rev.Stat. ch. 68, ¶ 9–102(A))—to reopen Mr. Zackai's case. Rule 23 Order at 5. Neither the fact that Mr. Zackai's case was a member of the *Vergil* class, nor the

### The Adequacy of the Named Plaintiffs

Despite the Seventh Circuit's near-ruling in *Bennett* that "the named plaintiffs in this case seem fully representative of the class," 827 F.2d at 67, the defendant contends that they are inadequate representatives of the class, and therefore that, pursuant to Rule 23(a)(4), the class should not be certified. The plaintiffs have offered to have other named plaintiffs intervene should the court agree with the defendant's argument, but there is no need for that.

### 1. *Roy Bennett*

■ Mr. Bennett is not a sympathetic plaintiff. In 1976, he filed a charge with the FEPC alleging that his employer had unlawfully terminated him. His employer said the termination resulted from excessive absences, and the record reflects that Mr. Bennett did indeed find it easier to stay home than to show up at work. Nevertheless, he got his job back. The FEPC says that he was reinstated as part of a resolution of his charge, but has no evidence to support this assertion. Mr. Bennett says his reinstatement came despite the FEPC's failure to act on his charge at all. In any case, Mr. Bennett did not keep his job long; when his penchant for skipping work again reared its head, his employer again fired him. Mr. Bennett filed another FEPC charge, and this time the FEPC indisputably did act, dismissing his charge for lack of substantial evidence, and affirming the dismissal on appeal. Mr. Bennett did not seek judicial review, as was his right under old ¶ 860.[3]

fact that the United States Supreme Court dismissed his earlier due process claim against the FEPC, *Zackai v. Board of Governors,* 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980), stood as a bar to his attack on the FEPC's subsequent administrative closing of his case.

**3.** Ill.Rev.Stat.1979 ch. 48, ¶ 860 (replaced in 1980 by Ill.Rev.Stat. ch. 68, ¶ 8–111) provided an avenue for judicial review to anyone whose charge was dismissed by the Commission. The plaintiffs in this case, however, contend that they could not obtain judicial review through this, or any other, FEPA provision, because their charges were not dismissed, just closed, thereby leaving them in a state of legal limbo.

The defendant contends that Mr. Bennett is not a proper class representative because, inasmuch as his first charge was resolved and his second dismissed, neither of Mr. Bennett's charges were administratively closed in 1980. According to the defendant, Mr. Bennett does not have standing, and even if he does, the factual disputes regarding whether he had a claim pending make his case different from those of the other class members.

Mr. Bennett's situation highlights the quandaries of this case. Attempting to figure out just whose claims were closed nearly a decade ago, and then what to do about it, poses labyrinthine nightmares for all of the parties to this litigation.

The Seventh Circuit, however, has instructed that the presence of factual disputes as to whether a plaintiff actually had a valid FEPA charge outstanding in 1980 does not alter his right to receive notice from the FEPC of the status of his claim. *Id.* at 70. Even assuming that there is a factual dispute as to whether Mr. Bennett had an outstanding charge in 1980, there is no evidence indicating that Mr. Bennett actually received notice that his original charge was resolved. On the contrary, the FEPC notified him in 1979 that his charge remained outstanding, *see id.* at 65, and Mr. Bennett wants, at the very least, for the FEPC to reopen his case and determine whether that is correct. Like the other member of the plaintiffs' proposed class, he will get that relief only if this court finds a due process violation in the FEPC's 1980 administrative closing of all 180–day old cases. Mr. Bennett therefore has standing, and is an adequate, if meagre, representative of the class.

### 2. *Hattie Cunningham*

■ In 1976, Ms. Cunningham filed a FEPA charge alleging that a potential employer had refused to hire her because of her race. The potential employer subsequently offered her a job, but she did not take it. She later joined in this lawsuit in an effort to vindicate her claim.

While this case was on appeal to the Seventh Circuit, Ms. Cunningham died.

The Seventh Circuit held that her § 1983 claim survived her death, 827 F.2d at 68, and then temporarily substituted her daughter, Wanda Cunningham, as a plaintiff. The Court proceeded to state that if the Illinois Probate Court appointed Wanda as administrator of the estate then she could petition for permanent substitution; if the Probate Court appointed someone else as administrator, then he could petition for substitution. *Id.* On April 12, 1989, the Probate Court appointed Wanda as administrator, and on April 17, Wanda moved for permanent substitution under Fed.R. Civ.P. 25(a), a motion this court will grant today.

Nevertheless, the defendant argues that the Seventh Circuit's ruling in *First Interstate Bank of Nevada v. Chapman & Cutler*, 837 F.2d 775 (7th Cir.1988), prohibits Wanda from serving as class representative. In that case, the Court affirmed the district court's refusal to certify a class with the executor of the deceased plaintiff's estate serving as class representative. *Id.* at 781–82. Noting that a decision not to certify a class lies within the sound discretion of the lower court, the Seventh Circuit upheld the district court's reasoning that "the inherent conflict between an administrator's duty to act for the benefit of beneficiaries and creditors of the estate and the class representative's duty to act for all the class members," rendered the administrator an inappropriate class representative. *Id.* at 781. This court disagrees that the Seventh Circuit's ruling there prevents Wanda from serving as class representative here.

The Seventh Circuit's previous ruling in this case came close to ordering this court to appoint Wanda as class representative. By the time the Court reached the question of Wanda's substitution, it already had chosen to proceed as if the class had been certified. In allowing Wanda temporarily to substitute as a named plaintiff, the Court gave its imprimatur to Wanda serving as class representative, a determination this court feels constrained to follow in the absence of an unequivocal message that this would be inappropriate.

*Chapman & Cutler* does not provide such a message. In that case, the Seventh Circuit was merely affirming the district court's exercise of discretion, and thus was not establishing a strict rule that an administrator never may serve as a class representative. Moreover, the facts in that case differ from those in this one. The deceased's claim there already had been dismissed, so the estate could not benefit from the litigation, and would be expending money for the exclusive benefit of other class members—in contravention of the interests of the estate's beneficiaries and creditors. *First Interstate Bank of Nevada v. Chapman & Cutler,* No. 83 C 8583, slip op., 1986 WL 10050 (N.D.Ill. Sept. 4, 1986); *First Interstate Bank of Nevada v. Chapman & Cutler,* No. 83 C 8583, slip op., 1986 WL 7346 (N.D.Ill. June 19, 1986). Ms. Cunningham's estate, by contrast, may benefit from a reopening of her FEPA claim.[4] And Wanda will incur few costs outside of those she would have had to spend anyway, inasmuch as the Mandel Legal Aid Clinic is representing her for free.

This is not to say that Wanda's representation (or Mr. Bennett's for that matter) is perfect; in this case nothing is. Ms. Cunningham was offered a job shortly after she filed her claim, but did not take it, thus making the likelihood of a substantial recovery minimal. And it would be nice to have a named representative in this case who had done what most of the class members have—filed a charge, lost the charge, and then lived to tell about it.

The Seventh Circuit, however, has not given this court such latitude. The Court has made eminently clear that it wants this case to move to the merits, and that procedural irregularities should not stand in the way. Mr. Bennett and Wanda will not be perfect representatives of the class, but they will be adequate, and given the history of this case, that is all this court can consider.

*The Proposed Class Definition*

■ The defendant lastly argues that, should this court reject all of the above arguments, the court should at the very least amend the class definition so as to exclude anyone who, through other lawsuits, already has had his charge reopened and processed. That is fair.

### CONCLUSION

Wanda Cunningham's motion to substitute on behalf of Hattie Cunningham's estate is granted. The plaintiffs' motion for class certification is granted. The court certifies a class consisting of all people who filed charges with the FEPC before September 16, 1978, and whose cases were administratively closed by the FEPC for failure to issue a complaint or dismiss the charge within 180 days, with the exception of any persons who subsequently had their cases reopened and their charges processed.

4. The defendant argues in a single sentence that the estate could not win a monetary award because Ms. Cunningham's potential employer offered her a job but she refused to respond. The plaintiffs ignore this argument, noting only that the Seventh Circuit held in *Bennett* that the determination as to whether Ms. Cunningham's state discrimination claim survived her death as a matter of state law (a different question from whether her due process claim for injunctive relief survived as a matter of federal law) must await the resolution of this lawsuit. 827 F.2d 68 n. 1. That Ms. Cunningham's discrimination claim may have survived, however, does not mean that Ms. Cunningham will be able to recover monetary relief.

Nevertheless, the defendant's argument carries no weight here. The defendant has not bothered to elaborate on FEPA's remedial scheme, nor to set forth whether the job Ms. Cunningham was offered was the same as the one she originally sought. The court therefore will assume, as the plaintiffs assert, that Ms. Cunningham's estate would recover were Ms. Cunningham's claim against her potential employer ultimately to prevail.