**FRED HARVEY, INC.,**
Plaintiff-Appellee,

v.

**Ellen B. MOONEY,** Clerk of the
Village of Hinsdale, et al.,
Defendants-Appellees,

**Edward Plumb, Petitioner-Appellant.**

**No. 75–1121.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1975.

Decided Nov. 17, 1975.

Rehearing Denied Dec. 16, 1975.

Paul Gendel, Chicago, Ill., Richard Hoffman, Evanston, Ill., for petitioner-appellant.

James L. Marovitz, Merle L. Royce, II, Chester J. Maciorowski, Champ W. Davis, Jr., and George R. Hooper, Chicago, Ill., for plaintiff-appellee.

Before STEVENS and SPRECHER, Circuit Judges, and GRANT, Senior District Judge.*

SPRECHER, Circuit Judge.

This appeal in a diversity case raises the question of whether an applicant for intervention as of right can claim an interest relating to the property which is the subject of the action when, under Illinois law, he seeks to represent petitioners in one annexed area who petitioned to change the status of another annexed area from wet to dry under Ill. Rev.Stats. ch. 43, § 173.1(b).

I

The plaintiff, Fred Harvey, Inc., operated a restaurant, including private dining rooms for banquets, a cocktail lounge and a gift shop, on the north side of Ogden Avenue west of the Illinois State Toll Highway in DuPage County, called the Spinning Wheel, under a lease which commenced in August 1954 and was to expire by its terms at the end of 1977.

On September 4, 1973, the Spinning Wheel Tract of land became a part of the Village of Hinsdale, Illinois, under an ordinance adopted by the Board of Trustees of the Village, pursuant to the provisions of Ill.Rev.Stats. ch. 24, § 7–1–13 and pursuant to a preannexation agreement between the Village of Hinsdale and the owner of the property.

This preannexation agreement provided in part as follows:

Hinsdale represents that a liquor license is available for issuance that will permit the sale of alcoholic beverages on the Premises under the same terms as such sales are now conducted in the county. Owner agrees to cause Harvey to apply for the liquor license pursuant to the Liquor Control Ordinance within five (5) days after the adoption by the Village of the Annexation Ordinance, and the Village agrees to suspend enforcement of its Liquor Control Ordinance to the date of granting of the liquor license to Harvey.

On September 10, 1973, the plaintiff obtained from the Local Liquor License Commissioner of Hinsdale and the Village Clerk, a retail liquor license entitling the plaintiff to sell, dispense and serve alcoholic beverages in and upon the Spinning Wheel Tract.

Almost ten months later, on June 18, 1974, the property immediately adjoining the Spinning Wheel Tract on the north, known as the Koplin Tract was annexed to and became a part of the Village of Hinsdale, Illinois pursuant to the provisions of Ill.Rev.Stats. ch. 24, § 7–1–13 and an ordinance adopted by the Board of Trustees of the Village.

On October 10, 1974, a petition was filed with the Village Clerk purporting to contain the signatures of 66⅔ percent of the legal voters of Election District 120, known as York Township, Precinct 120 and seeking to prohibit the sale at retail of alcoholic liquor at the Koplin and Spinning Wheel Tracts and purportedly filed pursuant to Ill.Rev.Stats. ch. 43, § 173.1(b).[1]

---

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

1. Ill.Rev.Stats. ch. 43, § 173.1(a) and (b) provide in part:

The status of an annexed area or disconnected area, relative to the sale at retail of alcoholic liquor pursuant to Section 8, shall remain the same until changed in accordance with the following provisions:

(a) Upon the filing, in the office of the clerk of the political subdivision or precinct of which the annexed area or disconnected area becomes a part, of a petition directed to such clerk, containing the signatures of not less than 25% of the legal voters residing in such annexed or disconnected area, to submit to the voters thereof the proposition to continue its current status, the proposition shall be submitted to the voters of the annexed or disconnected area at a special election called for

Section 173.1(b) requires that petitions contain the signatures of 66⅔ percent of the legal voters residing in the annexed area. All the voters signing the petition for the change of status of the Koplin and Spinning Wheel Tracts were residents of the Koplin Tract, which was separately annexed by the Village of Hinsdale after the annexation of the Spinning Wheel Tract. There were no registered voters residing in the Spinning Wheel Tract.

On November 4, 1974, plaintiff filed its complaint against the Village Clerk, the Local Liquor License Commissioner and the Chief of Police of the Village of Hinsdale, praying for a declaratory judgment adjudicating the validity of the petition seeking to prohibit the plaintiff from selling alcoholic liquor, and injunctive relief. The defendants filed their answer admitting allegations of which they had knowledge, alleging insufficient knowledge of some allegations and praying that the court adjudicate the validity of the petition.

On November 14, 1974, Edward Plumb, one of the petitioners included among the purported 66⅔ percent of the voters of the Koplin and Spinning Wheel Tracts, moved for leave to intervene as a party defendant. On November 19, Plumb filed an answer to the complaint.

On November 20, 1974, the district court denied the prospective intervenor's petition for leave to intervene. This is the only order appealed from in this appeal.

On November 22, the district court granted a preliminary injunction based upon findings of fact and conclusions of law. On January 29, 1975, the district court granted the plaintiff's motion for judgment on the pleadings on Count I of the complaint and declared that "the Petition to prohibit the retail sale of liquor on the Spinning Wheel tract is invalid."

The prospective intervenor's notice of appeal was filed on December 18, 1974. Thereafter, in August 1975, the Fred Harvey, Inc. lease was terminated. The owner of the Spinning Wheel Tract, Wilma D. Castle, a resident of Illinois as Trustee under Trust Agreement dated October 30, 1968, succeeded to the plaintiff's possession of the premises and "has a direct interest in the use or disposition of said premises and facilities including the right to own, use or convey premises which are not encumbered with a prohibition on the sale of alcoholic beverages at retail."

The prospective intervenor on appeal has claimed his right to intervene, but we also must resolve the problem of the proper party-plaintiff and, in view of the prospective intervenor's argument that the named defendants did not adequately represent him, we *sua sponte* consider the federal jurisdictional basis for the action.

---

such purpose within 60 days following the filing of the petition. The petition shall be supported by an affidavit made by one or more of the petitioners and stating that the signatures represent not less than 25% of the legal voters residing in the annexed or disconnected area. The provisions in Sections 1, 2, 4, 5, 6 and 7 of this Article shall apply except where they conflict with this Section, in which event the provisions of this Section shall control. If a majority of the voters voting upon such proposition in any such annexed or disconnected area vote "NO", the current status shall cease in that area; or

(b) Upon the filing in the office of the clerk of the political subdivision of which the annexed area or disconnected area becomes a part of a petition directed to such clerk containing the signatures of not less than 66⅔% of all the legal voters residing in the annexed or disconnected area to change the status in that annexed or disconnected area relative to the sale at retail of alcoholic liquor by either:

(1) discontinuing any existing prohibition, or

(2) prohibiting the sale at retail of alcoholic liquor, or

(3) prohibiting the sale at retail of alcoholic liquor other than beer containing not more than 4% of alcohol by weight, or

(4) prohibiting the sale at retail of alcoholic liquor containing more than 4% of alcohol by weight except in the original package and not for consumption on the premises, the requirements for an election in subsection (a) above shall be waived.

## II

■ Jurisdiction was based upon diversity of citizenship.[2] Where a business is threatened by a regulatory statute the amount in controversy is determined by the difference between the value of the business unregulated and its value under the regulation. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 277–79, 57 S.Ct. 197, 81 L.Ed. 183 (1936).

■ The district court heard evidence that plaintiff's public food sales for the prior year (1973) were $350,000 and its banquet food sales were $126,000; that its public liquor sales for that year were $313,000 and its banquet liquor sales were $47,000.[3] The jurisdictional amount was therefore clearly established.

■ When federal diversity jurisdiction has attached, as here, with the tenant as one party, the substitution of the non-diverse landlord for the tenant in no way affects or defeats the jurisdiction. *Hardenbergh v. Ray,* 151 U.S. 112, 118–19, 14 S.Ct. 305, 38 L.Ed. 93 (1894).

## III

The owner of the Spinning Wheel Tract moved to be substituted for Fred Harvey, Inc. at oral argument. We grant that motion.[4]

Rule 25(c), Fed.R.Civ.P., provides in part that "[i]n case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with

the original party." Prior to the adoption of the Federal Rules of Appellate Procedure, it was held by analogy to Rule 25(c) that courts of appeal had the power to order a substitution of parties as a matter of discretion. *McComb v. Row River Lumber Co.,* 177 F.2d 129, 130 (9th Cir. 1949).

Rule 43(b), Fed.R.App.P., provides:

If substitution of a party in the court of appeals is necessary for any reason other than death, substitution shall be effected in accordance with the procedure prescribed in subdivision (a) [motion to substitute shall be filed with the clerk of the court of appeals with service upon all other parties].

■ The necessary procedure has been followed. The prospective intervenor, in view of our denial of intervention in Part IV, has no standing to object, but nevertheless the substitution is proper.

In *Walker v. Providence Journal Company,* 493 F.2d 82 (1st Cir. 1974), a franchisee brought an antitrust action against a newspaper for refusing to deal with him. Two months after the complaint had been filed and two weeks before the time set for the trial court hearing, the franchisee defaulted and left the state. The franchisor took over the franchisee's interests and sought a new franchisee. The court said at 86:

When the original complaint was filed Walker was still transacting business; although during the pendency of the action the Walker franchise "terminated" and was not "assigned" to Homefinders, Homefinders, as franchisor, automatically reacquired the rights it had ceded to Walker. It came again to possess the right to place or operate a franchise in Rhode Island.

\* \* \* \* \* \*

banquet food sales $81,000; its public liquor sales were $183,000 and its banquet liquor sales $27,000.

---

**2.** The complaint alleged an amount in controversy exceeding $10,000, exclusive of interest and costs; defendants in their answer pleaded insufficient knowledge to admit or deny; the prospective intervenor in his answer denied the allegation of sufficient jurisdictional amount.

**3.** For the first nine months of 1974, the plaintiff's public food sales were $192,000 and its

**4.** However, inasmuch as the substitution takes place at this late date, for convenience the caption shall remain as before.

Rule 25(c) provides that in case of any transfer of interest the action may be continued by the original party unless the court upon motion directs substitution or joinder. Homefinders should have moved for joinder, but its mere failure to do so was not fatal. *See* 3B Moore's Federal Practice ¶ 25.-08. Homefinders has made known its interest in carrying forward the litigation.

## IV

Finally, we reach the question of whether the prospective intervenor was entitled to intervene as a matter of right. Rule 24(a), Fed.R.Civ.P., provides that "anyone shall be permitted to intervene . . . when the applicant claims an interest relating to the property . . . which is the subject of the action . . . ."

43 Ill.Rev.Stats. § 173.1 provides in part that "[t]he status of an annexed area . . . , relative to the sale at retail of alcoholic liquor . . . , shall remain the same until changed in accordance with the following provisions . . . . ." There follows a provision for change by referendum vote and a provision for automatic change by the petition of a two-third or more majority.

In the present case, a petition was filed by a purported two-third majority under Section 173.1(b), which provides in part:

> Upon the filing in the office of the clerk of the political subdivision of which the annexed area . . . becomes a part of a petition directed to such clerk containing the signatures of not less than 66⅔% of all the legal voters residing in the annexed . . . area to change the status in that annexed . . . area relative to the sale at retail of alcoholic liquor by . . . prohibiting the sale at retail of alcoholic liquor . . . [the requirements for a referendum shall be waived].

The prospective intervenor contended that the 66⅔ percent majority is meas-ured by the number of voters residing in *any* annexed area or areas of the political subdivision. He argued that although the Spinning Wheel annexation and the Koplin annexation were separate in time and manner, the two annexations were to be considered as a single "annexed area" for the purpose of Section 173.1(b).

The language of the statute is clearly to the contrary. The operative language measuring the two-third majority is "the legal voters residing in the annexed . . . area to change the status in that annexed . . . area relative to the sale at retail of alcoholic liquor . . . ." The draftsman of that language provided two firm guideposts to its meaning.

The first lodestar is "the legal voters residing in *the* annexed . . . area." The draftsmen did not say "any annexed area" or "annexed areas" but "the annexed area." But if the use of the definite article does not sufficiently limit the meaning of "annexed area" to one or a single annexed area, then the second phrase is conclusive: "to change the status in *that* annexed . . . area." The *only* annexed area whose status the intervenor sought to change was the Spinning Wheel area inasmuch as it was the only area where the sale at retail of alcoholic liquor was permitted. Thus, "that annexed . . . area" could only refer to the Spinning Wheel area. The use of the word "that" in turn refers to the same annexed area as in the previous language "the legal voters residing in the annexed . . . area."

Consequently, the number of voters required to trigger the operation of Section 173.1(b)(2) in this case would have been 66⅔ percent of the legal voters residing in the Spinning Wheel area. *None* of the names on the petition were of legal voters residing in the Spinning Wheel area. Hence, the petition was invalid and of no effect.

In addition to the two definite ways in which the draftsmen indicated the meaning of Section 173.1(b)(2), they provided a third clear clue to its meaning in Sec-

tion 173.1(a), which provides for a referendum as follows:

> Upon the filing, in the office of the clerk of the political subdivision or precinct of which the annexed area . . . becomes a part, of a petition directed to such clerk, containing the signatures of not less than 25% of the legal voters residing in such annexed . . . area, to submit to the voters thereof the proposition to continue its current status, the proposition shall be submitted to the voters of the annexed . . . area . . . .

The operative language in Section 173.1(a) is "the legal voters residing in *such* annexed . . . area, to submit to the voters *thereof* the proposition to continue *its current status* . . . ." "Current status" could only refer to an annexed area such as the Spinning Wheel area where the petition sought to change a wet area to a dry area. The voters "thereof" of "such" annexed area could only refer to the voters in the Spinning Wheel area.

If the legislative draftsmen intended to include the broader annexed territory contended for by the prospective intervenor, the pertinent modifier would have been "any" and not "such" and no reference would have been made to "its current status." *United States v. Legg,* 157 F.2d 990, 992–93 (4th Cir. 1946). In *United States v. Pittman,* 151 F.2d 851, 852 (5th Cir. 1945), the court said:

> Congress, however, did not say "*any* suit brought . . . .", but "any *such* suit" so brought. We cannot throw away the word "such." It is descriptive and limiting, referring always to a class just before pointed out.

■ There is no indication in Section 173.1 or elsewhere that part (a) applies to a different "annexed area" than part (b). Therefore, part (a) provides the third ground for concluding that the requirement of Section 173.1(b) that 66⅔ percent of the legal voters are necessary on a petition to automatically change a wet area to dry, means two-thirds of the voters in the wet area, namely here, the Spinning Wheel area. Since none of the names on the petition were residents of the Spinning Wheel area, the petition was invalid.

■ Thus, neither the prospective intervenor nor any of the persons signing the petition had any interest relating to the status of the Spinning Wheel Tract nor any right to intervene. Consequently, the district court did not abuse its discretion in denying the petition for leave to intervene. The order of November 20, 1974, denying the petition is affirmed.

Affirmed.

STEVENS, Circuit Judge (dissenting).

This litigation arose out of a controversy between the lessee of the Spinning Wheel tract, who wants to retain the right to dispense liquor, and certain neighbors, who claim the statutory right to terminate that liquor license. The question presented by the appeal is whether it was error to deny the spokesman for those neighbors permission to intervene in the litigation before deciding the merits of the case.

The outcome on the merits apparently depends on whether the annexation of the Spinning Wheel tract (where no voters reside) and the annexation of the Koplin tract (where the signatories of appellant's petition reside) should be treated as a single annexation, or as two separate annexations, within the meaning of § 173.1 of the Illinois Liquor Control Act. Without any party to the litigation arguing to the contrary, the plaintiff convinced the district court and a majority of this court that the Village made two separate annexations rather than just one.

Appellant's timely motion for leave to intervene was summarily denied. The district judge did not explain his ruling, but he was apparently satisfied that the neighbors' interest in the controversy was adequately represented by the attorney for the Village of Hinsdale and the

defendant officials.[1] This was plainly not the case. The Village did not even answer the complaint until after the request to intervene had been denied. When the defendants did answer, they represented that their position was in some respects adverse to appellant's.[2] The defendants offered no opposition to the plaintiff's version of the facts or the law and merely indicated that they would abide by whatever decision the court might make. They took no appeal. It is not unreasonable to infer, particularly since the preannexation agreement contemplated the continuance of the existing liquor license, that defendants' interest in the outcome of the litigation paralleled the plaintiff's. Surely they did not adequately represent the appellant.

Nor can the district court's ruling be defended on the ground that appellant's position was manifestly frivolous. If it had been perfectly clear that two separate annexations had taken place, then it would have been equally clear that the petition circulated by appellant was a nullity. On that hypothesis, the petition should not have been filed by the Village Clerk, and there was no need for the Village attorney to advise the plaintiff that the petition would automatically take effect on November 9, 1974, unless objections were filed "by a voter residing on the properties in question."[3] Quite obviously the litigation was filed because neither the plaintiff nor the Village attorney was sure that the petition was defective, and both were in doubt about the status of the liquor license.

There are several reasons why an Illinois court might conclude that there was only one annexation of both the Spinning Wheel and the Koplin tracts within the meaning of § 173.1. There is no judicial decision interpreting that section as applied to a comparable situation. Since no voters reside in the Spinning Wheel tract, the statute is virtually meaningless if that is the relevant "annexed area." Since the only voters interested in the controversy reside in the adjoining Koplin tract, an Illinois court might conclude that they are members of the class which the statute was intended to protect.[4] The allegations in

1. The only explanation for the court's ruling is found in the following colloquy:

   "THE COURT: The only defendants in this suit are Ms. Mooney, the village clerk, Ellen B. Mooney, clerk of the Village of Hinsdale, et al. The other officials of the village were fully able and capable and willing to enforce whatever the court's order might be as far as the provisions of that ordinance are concerned.
   "MR. ROYCE: That's right.
   "THE COURT: Your petition to intervene is denied.
   "MR. ROYCE: Thank you, your Honor.
   "MR. BOOTH: You are not granting us the right to intervene?
   "THE COURT: No, because you are not an indispensable party. The village officials are perfectly able and willing—
   "MR. BOOTH: But there is a conflict between the—
   "THE COURT: It is denied, Mr. Booth. Do you understand English?
   "MR. BOOTH: Certainly."
   (Transcript of proceedings on November 20, 1974, p. 7.)
   The court did not address the question of statutory construction until after plaintiff filed its motion for judgment on the pleadings on December 13, 1974. On December 20, 1974, de-

fendants filed a formal opposition to that motion, but do not appear to have seriously contested the matter.

2. On page 4 of their answer defendants represented that "their position in this matter, however, is not the same as those who signed the said Petition and, in some respects, is adverse to those petitioners."

3. In paragraph 15 of the complaint, plaintiff alleged "that the attorney for the Village of Hinsdale has informed plaintiff that unless objections to the petition are filed by a voter residing on the properties in question, the petition will automatically take effect on November 9, 1974, and thereafter the sale of alcoholic liquor will be prohibited on said properties."

   Earlier in the complaint the term "said properties" had been used to refer to both the Koplin and Spinning Wheel tracts.

4. In another context the Illinois Appellate Court has held that a municipality may not evade a restriction on annexation of a single large tract "by tandem, piecemeal annexation" notwithstanding literal compliance with the terms of the relevant statute. See Town of Normal v. Harter, 5 Ill.App.3d 363, 283 N.E.2d 44, 47 (4th Dist. 1972).

the motion to intervene imply that Hinsdale had a single plan of annexation encompassing the Spinning Wheel and Koplin tracts, as well as a third adjoining tract.[5] The two transactions occurred in sufficiently close sequence to lend credence to appellant's claim that they were two steps in a single transaction. These facts may not overcome the apparent meaning of the statutory language, but in my judgment they provide the basis for an argument which the district court should have considered before deciding the case.

For purposes of deciding the procedural question presented by the appeal, I assume that the ultimate outcome of the litigation has been unaffected by the absence of any formal representation of the interest of the petitioners. I also assume that they do not have the kind of interest that gives them a right to intervene pursuant to Rule 24(a). Nevertheless, as residents of the tract adjoining the Spinning Wheel, they certainly have the kind of interest in the litigation that makes it appropriate to hear their side of the underlying controversy. *Cf. Wolpe v. Poretsky,* 79 U.S.App.D.C. 141, 144 F.2d 505, 508 (1944).

Appellant sought leave to intervene pursuant to Rule 24(b) as well as Rule 24(a).[6] Since there was no party to the case advocating his position, and since his position was not manifestly frivolous and was directed at the heart of the controversy, in my judgment it was an abuse of discretion to deny his motion. If our adversary system is to continue to function effectively as an acceptable means of resolving disputes among our citizens, we must insist on orderly procedures that ensure representation of the real conflicting interests which give rise to litigation.

---

5. In paragraph 8 of his motion for leave to intervene as a party defendant, appellant alleged that "Hinsdale for more than two years has aggressively been engaged in measures to annex the Spinning Wheel, KOPLIN and Cypress Tracts; all adjoining each other." The motion further alleged that material facts relating to the annexation had not been disclosed by the parties, and that there was a conflict between the interests of the Village and the appellant relating to the disclosure of such facts.

I do not understand appellant to argue that the voters in *any* annexed area would have standing to challenge the plaintiff's license; on the contrary, he argues that the Koplin and Spinning Wheel tracts are in fact a single annexed area for the purpose of this case.

6. See paragraph 7 of the motion for leave to intervene as a party defendant filed on November 15, 1974.