827 F.2d 63
 44 Fair Empl.Prac.Cas. 962,
44 Empl. Prac. Dec. P 37,349, 56 USLW 2146,
8 Fed.R.Serv.3d 950
 Roy BENNETT and Hattie Cunningham, on their own behalf and
on behalf of all those similarly situated,
Plaintiffs-Appellants,
v.
Joyce E. TUCKER, Director of the Illinois Department of
Human Rights, Defendant-Appellee.
 No. 86-2628.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 1, 1987.
Decided Aug. 11, 1987.
Rehearing and Rehearing En Banc Denied Sept. 30, 1987.
 
 Jonathan K. Baum, Chicago, Ill., for plaintiffs-appellants.
 Jeffrey W. Finke, Illinois Atty. Gen., Chicago, Ill., for defendant-appellee.
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 In Logan v. Zimmerman Brush Company, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Supreme Court held that the Illinois Fair Employment Commission's refusal to process a discrimination claim, solely because the Commission had failed to act on the claim within the time provided by state law, deprived a claimant of his property without due process. Eleven months after the Supreme Court decided Logan, plaintiffs Bennett and Cunningham filed this Sec. 1983 action. The plaintiffs alleged that the refusal of the Illinois Department of Human Rights (the successor agency to the Illinois Fair Employment Commission) to process their discrimination claims, solely because the Commission had failed to act on their claims within the time provided by state law, was depriving them of their property without due process. The plaintiffs sought an injunction requiring the defendant, in her official capacity as Director of the Department of Human Rights, to process their claims. The district court granted summary judgment to the defendant on the grounds that Cunningham's federal claim was barred by laches, and that Bennett had not complied with state procedural requirements when he filed his discrimination claim. We disagree with the district court's conclusions, and reject the alternate grounds for upholding the judgment advanced by the defendant. We therefore reverse the judgment of the district court and remand for further proceedings.
 
 I.
 
 2
 Roy Bennett filed a complaint with the Illinois Fair Employment Commission on August 3, 1976, alleging that he had not been recalled to work because of a physical handicap. Soon thereafter, Hattie Cunningham filed a similar complaint, alleging that she had been denied employment because of her race. In each case, the Commission failed to take any action within 180 days of the filing of the complaint.
 
 
 3
 On January 20, 1978, the Illinois Supreme Court held that p 858.01(c) of the Illinois Fair Employment Practices Act, Ill.Ann.Stat. ch. 48, p 858.01(c) (Smith-Hurd 1978) (repealed 1980), which provided that the Illinois Fair Employment Commission "shall" act within 180 days of the filing of an unfair employment practice complaint, imposed a mandatory time limit within which the Commission had authority to act on a claim. See Springfield-Sangamon County Regional Plan Commission v. Fair Employment Practices Commission, 71 Ill.2d 61, 68-69, 15 Ill.Dec. 623, 626, 373 N.E.2d 1307, 1310 (1978). If the Commission failed to act within this period, the court ruled, the claimant lost the right to pursue the claim. See id. Following the Springfield-Sangamon decision, the Commission ceased work on 2,500 to 3,000 claims that it had not processed within 180 days of submission.
 
 
 4
 During 1979, the Commission sent notices to the affected claimants, including Bennett and Cunningham, advising them of the Springfield-Sangamon decision, and asking them if they were still interested in having the Commission process their claims. Bennett and Cunningham responded, informing the Commission that they wished to have their claims processed. However, the Illinois Supreme Court subsequently decided Board of Governors v. Illinois Fair Employment Practices Commission, 78 Ill.2d 143, 35 Ill.Dec. 524, 399 N.E.2d 590, appeal dismissed, 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980), in which the court held that the Commission could make no exceptions to the 180-day rule set forth in Springfield-Sangamon.
 
 
 5
 On July 1, 1980, all charges pending before the Illinois Fair Employment Commission were transferred to the Department of Human Rights. See Ill.Ann.Stat. ch. 68, p 9-102(a) (Smith-Hurd Supp.1987). Two months later, the Department informed Cunningham that it was "administratively closing" her case. Although Illinois law makes no provision for an agency to administratively close a case, the Department stated that it was acting on the authority of the Illinois Supreme Court's decision in Board of Governors. The Department never took any action on Bennett's claim.
 
 
 6
 Two weeks after the Department of Human Resources closed Cunningham's case, the Illinois Supreme Court decided Zimmerman Brush Company v. Fair Employment Practices Commission, 82 Ill.2d 99, 44 Ill.Dec. 308, 411 N.E.2d 277 (1980). In that case, the court was required to construe another provision of the Fair Employment Act, which had required the Commission to hold a conference within 120 days of the filing of a complaint. Relying on its previous decisions in Springfield-Sangamon and Board of Governors, the court held that the claimant had lost the right to pursue a fair employment claim because the Commission had not met this deadline. See Zimmerman, 82 Ill.2d 99, 102-07, 44 Ill.Dec. 308, 310-13, 411 N.E.2d 277, 279-82 (1980).
 
 
 7
 On February 24, 1982, the Supreme Court reversed the Illinois Supreme Court's decision, holding that the Commission had deprived the claimant of the property interest that he had in his discrimination claim without due process. See Logan v. Zimmerman Brush Company, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Based on the Supreme Court's decision in Logan, an attorney for Bennett and Cunningham contacted the Illinois Department of Human Rights on March 17, 1982, and requested it to resume work on the plaintiffs' claim. In August or September of 1982, the Department informed plaintiffs' counsel that it would not take any action on the plaintiffs' claims.
 
 
 8
 The plaintiffs filed this suit, under 42 U.S.C. Sec. 1983, on January 23, 1983. The plaintiffs sought an injunction ordering Joyce Tucker, the Director of the Department of Human Resources, to process their claims. They also sought certification of a class composed of those individuals whose fair employment claims had never been acted on because the state had failed to meet its own deadlines. Three months after the plaintiffs filed suit, the defendant moved to dismiss the action on eleven separate grounds. The district court, concluding that the defendant's arguments had no merit, denied the motion. See Bennett v. Tucker, No. 83 C 480 (N.D.Ill. Aug. 8, 1983) (memorandum and order).
 
 
 9
 On December 2, 1983, the plaintiffs moved for partial summary judgment on the issue of liability, and for class certification. Director Tucker opposed the plaintiffs' motion for summary judgment, and filed a cross-motion requesting summary judgment on the same grounds that the court had previously rejected. The case was subsequently reassigned to a new judge, who granted the defendant's motion for summary judgment on May 8, 1986. The district court held that Cunningham's federal claim was barred by laches, and that Bennett had no federal claim because it was undisputed that he had failed to file his original claim within the period of time required by state law. See Bennett v. Tucker, 634 F.Supp. 355 (N.D.Ill.1986) (memorandum opinion and order). The plaintiffs moved to alter or amend the judgment. The district court denied the motion, and the plaintiffs appealed.
 
 II.
 
 10
 Although neither party raised the issue, this case presents a question regarding our jurisdiction. In this case, the district court granted the defendant's motion for summary judgment without first expressly deciding the plaintiffs' motion for class certification. This is a violation of Federal Rule of Civil Procedure 23, which requires the district court to decide the question of class certification "as soon as practicable," Fed.R.Civ.P. 23(c)(1). In Glidden v. Chromalloy American Corporation, 808 F.2d 621 (7th Cir.1986), we held that, under certain circumstances, a district court's failure to comply with this rule would deprive us of appellate jurisdiction.
 
 
 11
 In Glidden, the district court granted summary judgment, but expressly declined to decide the issue of class certification. See id. at 623. Based on our review of the record, we concluded that the court probably had decided to withhold its decision because the named plaintiff did not appear to be representative of the class. Because the district court's order granting summary judgment "explicitly contemplate[d] further proceedings to ascertain who [would] be bound," id., we concluded that the district court's judgment did not constitute a "final decision" within the meaning of 28 U.S.C. Sec. 1291. We therefore dismissed the case for want of appellate jurisdiction. Nonetheless, we left open the question of whether, in some cases in which a district court had not ruled on class certification, it would be permissible for us to proceed "as if the district judge had certified the class," id. at 624.
 
 
 12
 Our subsequent decision in Gomez v. Illinois State Board of Education, 811 F.2d 1030 (7th Cir.1987), addressed the question left open in Glidden. In Gomez, the district court dismissed the action for failure to state a claim, without ruling on class certification. We noted that the district court had dismissed the plaintiffs' suit in its entirety, and concluded that the court's failure to rule on class certification did not deprive us of appellate jurisdiction because "the district court did not retain anything for later determination," id. at 1034 n. 1.
 
 
 13
 In this case, as in Gomez, the district court seems to have believed that no further proceedings would be required after it granted summary judgment. Indeed, the court's opinion granting summary judgment appeared to assume that the 2,500 to 3,000 individuals who had filed claims with the Human Rights Commission would be bound by its judgment. Given the long delay between the plaintiffs' motion for class certification, and the intervening transfer of this case from one judge to another, it is entirely possible that the district court believed that the class had been certified. Moreover, unlike in Glidden, the named plaintiffs in this case seem fully representative of the class, thereby removing any basis for believing that the district court may have deliberately deferred certification. In light of the above, we will treat this case as if the district court had certified the plaintiff class. Therefore, the court's grant of summary judgment is a final order which we have jurisdiction to review.
 
 III.
 
 14
 Before proceeding to the merits, we must resolve another preliminary matter. While this case was on appeal, Hattie Cunningham died. Her daughter, Wanda Cunningham, has petitioned this court to be substituted as a plaintiff. In order to decide this motion, we must first resolve whether Hattie Cunningham's Sec. 1983 claim survives her death. If Cunningham's federal claim survives, we must then resolve whether Wanda Cunningham may be substituted pursuant to Federal Rule of Appellate Procedure 43(a).
 
 
 15
 Federal law governs whether a federal claim survives. However, Sec. 1983 is silent on the question of survivability. Therefore, we must look to 42 U.S.C. Sec. 1988, which provides that if federal law does not provide a rule of decision in a civil rights case, federal law will incorporate the appropriate state law, unless that law is "inconsistent with the Constitution and laws of the United States," 42 U.S.C. Sec. 1988 (1982); see Robertson v. Wegmann, 436 U.S. 584, 590-94, 98 S.Ct. 1991, 1995-97, 56 L.Ed.2d 554 (1978).
 
 
 16
 In Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court held that, under Sec. 1988, the appropriate state law to look to in determining whether a Sec. 1983 claim is time-barred is the state law governing whether a personal injury claim is time-barred. Id. at 1948. The Court stressed the importance of adopting uniform rules governing the timeliness of all Sec. 1983 claims, see id. at 1944-47, and the appropriateness of analogizing a Sec. 1983 claim to a personal injury claim, id. at 1948-49. We believe that it is equally important to have a uniform rule of survivorship for Sec. 1983 claims, and that it would be anomalous to use a different analogy in this context. Accordingly, we conclude that, in order to determine whether a Sec. 1983 claim survives, we must look to the state law governing whether a personal injury claim survives. The Illinois Survivorship Act, Ill.Ann.Stat. ch. 110 1/2, p 27-6 (Smith-Hurd 1978), provides that personal injury claims survive the death of the plaintiff. Because this provision is not inconsistent with federal law, we adopt its rule of survivorship and conclude, as a matter of federal law, that Hattie Cunningham's Sec. 1983 claim survives.[1]
 
 
 17
 We must next determine whether Wanda Cunningham may pursue her mother's federal claim. Federal Rule of Appellate Procedure 43(a) states that "[i]f a party dies after a notice of appeal is filed ... the personal representative of the deceased may be substituted as a party" upon appropriate motion. Fed.R.App.P. 43(a) (West Supp.1987). However, "[i]f the deceased party has no representative," the rule provides that "proceedings shall ... be had as the court of appeals may direct." Id. Although the Advisory Committee did not define the words "personal representative," we assume that this refers to an individual recognized by state law, such as an executor.
 
 
 18
 The Illinois Probate Court has not appointed an executor for Hattie Cunningham's estate. Because Hattie Cunningham has no "personal representative" within the meaning of Rule 43(a), we are free to exercise our discretion in substituting a new plaintiff. See Fred Harvey, Inc. v. Mooney, 526 F.2d 608, 611 (7th Cir.1975). We are informed that Wanda Cunningham has sought appointment as executor of her mother's estate. Pending the resolution of this matter by the Illinois Probate Court, Wanda Cunningham is temporarily substituted as a plaintiff in this action. If the Probate Court appoints her executor prior to the completion of this case, she may petition for permanent substitution. However, if the Probate Court appoints some other party, that party may seek to be substituted.
 
 IV.
 
 19
 We next review the district court's decision to grant summary judgment against Cunningham on the ground that her claim was barred by laches. In our previous cases, we have applied varying standards in reviewing judgments for defendants based on laches. In some cases, we have analyzed such judgments under the abuse of discretion standard; in other cases, we have used the clearly erroneous standard; and, in a few cases, we have reviewed the decision de novo. See generally Piper Aircraft Corp. v. Wag-Aero, Inc., 741 F.2d 925, 935-40 (7th Cir.1984) (Posner, J., concurring) (collecting cases). However, we need not finally resolve this conflict. Even under our most deferential standard, abuse of discretion, we cannot uphold the decision of the district court.
 
 
 20
 Although laches is an equitable defense, a district court's decision to dismiss an action based on this ground is not standardless. See id. at 938 (Posner, J., concurring). Under the standard used in this circuit, a district court has discretion to dismiss an action for laches only if the plaintiff "has unreasonably delayed in [filing suit] and the delay has harmed the defendant." Hemmings v. Barian, 822 F.2d 688, 689 (7th Cir.1987). As our cases recognize, a district court may abuse its discretion if it applies an equitable standard incorrectly. See, e.g., Lawson Products v. Avnet, Inc., 782 F.2d 1429, 1437 (7th Cir.1986). We believe that this occurred here.
 
 
 21
 The first question in a laches analysis is whether the plaintiff delayed unreasonably in filing his or her claim. In considering this question, the district court looked at only one factor: Cunningham's failure to file suit until twenty-eight months after the Department of Human Rights closed her case. However, in order to determine whether such a delay is unreasonable, a court must look at the surrounding circumstances. When all of the surrounding facts are considered, we believe that no court could conclude that Cunningham's delay was unreasonable.
 
 
 22
 For the first seventeen months of Cunningham's delay, until the Supreme Court's decision in Logan v. Zimmerman, Cunningham's constitutional right to have her claim processed was not clearly established. Indeed, only two weeks after Cunningham received her closing notice from the state, the Illinois Supreme Court summarily rejected the due process argument advanced by the plaintiffs in this case. See Zimmerman Brush Company v. Fair Employment Practices Commission, 82 Ill.2d 99, 108, 44 Ill.Dec. 308, 313, 411 N.E.2d 277, 282 (1980). Given the state of the law, it was not unreasonable for Cunningham to delay filing suit until after the Supreme Court decided Logan. See Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1338 (10th Cir.1982) (delay not unreasonable until the law becomes clear). Moreover, once the Supreme Court decided Logan, Cunningham waited only three weeks before she requested the Department of Human Rights to process her claim. The Department, however, waited approximately six months before it finally informed Cunningham that it would not act on her claim. Although a plaintiff may not wait indefinitely for an administrative agency to act, see Cannon v. University of Health Sciences/The Chicago Medical School, 710 F.2d 351, 360 (7th Cir.1983), Cunningham was clearly correct to give the Department this reasonable opportunity to reconsider its position before she filed suit. Once the state made its intentions clear, Cunningham filed this suit within five months. This delay was certainly not sufficient to justify a finding of laches.
 
 
 23
 The second question in a laches analysis is whether the plaintiff's delay harmed the defendant. We have explained that laches is akin to an estoppel. Before granting a laches defense, a court must be convinced that the defendant reasonably relied on the plaintiff's failure to file suit, and that, based on the assumption that the plaintiff would not sue, the defendant altered his or her position in a detrimental manner. See Money Store v. Harriscorp Finance, 689 F.2d 666, 674 (7th Cir.1982).
 
 
 24
 In this case, the district court focused on the inconvenience to the defendant. However, laches requires more than just inconvenience. See Helene Curtis Industries v. Church & Dwight Company, 560 F.2d 1325, 1334 (7th Cir.1977), cert. denied, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978). The crucial inquiry in this case is whether the defendant reasonably could have construed the plaintiffs' delay to mean that the plaintiffs were not going to file suit. Given the pendency of Logan v. Zimmerman before the Supreme Court, we believe that the defendant should have realized that claimants might be delaying legal action pending the Court's decision. Therefore, we conclude that no court could find the type of harm required to grant a laches defense.
 
 V.
 
 25
 We next consider the district court's decision to grant summary judgment against Bennett. The district court entered summary judgment because it found that it was undisputed that Bennett's state discrimination claim was untimely. We have reviewed the record, and conclude that Bennett did, in fact, contest the defendant's allegation that his state claim had been untimely, see Plaintiffs' Motion for Partial Summary Judgment at 6 n. 2.[2]
 
 
 26
 Although Bennett has preserved his timeliness argument on appeal, we need not resolve this question. Bennett does not dispute the right of the Department of Human Rights to terminate his claim if, after providing him notice and some opportunity to be heard, the Department ultimately finds that his claim is untimely. See Logan v. Zimmerman, 455 U.S. at 434 n. 7, 102 S.Ct. at 1157 n. 7. Rather, Bennett is contesting the constitutionality of the procedure that the state actually used to terminate his claim. We are therefore presented with the question of whether a state agency violates due process when it simply ceases to act on a reasonable, good-faith claim because it believes that the claim is untimely.
 
 
 27
 Bennett's right to have the Department determine the merits of his discrimination claim is a property right. See Logan v. Zimmerman Brush Company, 455 U.S. 422, 428-32, 102 S.Ct. 1148, 1153-55, 71 L.Ed.2d 265 (1982). Once a state creates a property right, it may not obliterate that right "except pursuant to constitutionally adequate procedures." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). We do not believe that unilaterally ceasing to act on a reasonable, good-faith claim, based on the mere suspicion that it is untimely, constitutes due process. Such a procedure raises grave risks that individuals with valid claims may be deprived of their property interest without any procedural protection. See Mathews v. Eldridge, 424 U.S. 319, 343-47, 96 S.Ct. 893, 906-08, 47 L.Ed.2d 18 (1976) (The Due Process Clause is violated by procedures that have a high risk of erroneous deprivation of a property interest.). A claimant who files a reasonable, good-faith claim must receive some notice that his or her claim has been terminated, and some assured opportunity to contest this action. We therefore conclude that the district court erred in entering summary judgment against Bennett based solely on the defendant's unsupported allegation that his claim was untimely.
 
 VI.
 
 28
 We have rejected the grounds on which the district court granted summary judgment against Bennett and Cunningham. However, because no material facts are in dispute, we may affirm the court's judgment if we find that the defendant was entitled to prevail, as a matter of law, on any alternate grounds that she raised in the district court. See Boruski v. United States, 803 F.2d 1421, 1427 (7th Cir.1986). On appeal, the defendant urges us to uphold the district court's judgment on three grounds: that the relief which the plaintiffs seek is barred by the Eleventh Amendment, that the action must be dismissed for failure to join an indispensable party, and that the Supreme Court's decision in Logan v. Zimmerman does not apply to the plaintiffs' claims. We reject each of these arguments.
 
 A.
 
 29
 The defendant argues that the Eleventh Amendment bars a federal court from issuing an injunction requiring her to process the plaintiffs' discrimination complaints, because such an injunction would constitute "retrospective relief." We do not agree.
 
 
 30
 Because this suit is against a state officer, acting in her official capacity, this is a suit against the State of Illinois. See Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). The Supreme Court has held that a federal court may only grant "prospective" relief in a "state officer" suit. See Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The defendant argues that the relief that the plaintiffs are seeking is retrospective, because an injunction would require her to go back and reopen claims that she deems to have been closed. However, even if her description of this action is correct, the injunction that the plaintiffs seek does not constitute retrospective relief as the Supreme Court has used that term.
 
 
 31
 The Court explained in Edelman that the question of whether relief is prospective or retrospective is to be determined by reference to the purpose of the intended remedy. See id. at 668. If the purpose of the remedy is to force the state to pay money to compensate the plaintiff for the state's prior actions, the remedy is retrospective, and is proscribed even if the remedy is cast in the form of an injunction governing future conduct. See id. In contrast, if the purpose of the remedy is to force the state officer to conform his or her future conduct to the dictates of federal law, then the remedy is prospective, and is permissible even if it has significant financial consequences to the state. See id.
 
 
 32
 In this case, the plaintiffs are not seeking to obtain money from the state treasury to compensate them for the injury resulting from the state's refusal to act on their claims. Rather, the plaintiffs seek an injunction requiring the defendant to cease her ongoing violation of their federal constitutional right to have their claims processed. Therefore, the injunction that the plaintiffs request is clearly "prospective" as the Supreme Court has used that term.[3]
 
 B.
 
 33
 The defendant next claims that we must dismiss the plaintiffs' claims because the plaintiffs' employers are indispensable parties who must be joined as defendants. See Fed.R.Civ.P. 19.[4] We reject this argument.
 
 
 34
 The defendant first argues that the plaintiffs are trying to obtain money damages or job reinstatement--relief that only their employers can provide. This is incorrect. This lawsuit was not filed to obtain money damages or job reinstatement. Rather, the plaintiffs have brought this action to force the Department of Human Rights to take action on their claims. The plaintiffs' employers need not be joined for a court to provide that relief.
 
 
 35
 The defendant further argues that the employers must be joined because, if they are not bound by the judgment in this case, they may go into state court and have the Department's proceedings enjoined on the ground that, under state law, the Department has no power to adjudicate the plaintiffs' claims. This is patently incorrect. If a federal court finds that, as a matter of federal law, the plaintiffs have a constitutional right to have the Department process their claims, then the state courts will be powerless to enjoin the relief that federal law requires.
 
 
 36
 The defendant's final argument is that the plaintiffs' failure to join their employers has impaired the employers' ability to protect their interests. This assertion is groundless. The Supreme Court has explained that Rule 19 requires persons to be joined if the judgment in a pending action, although not res judicata as to them, would so definitively establish their legal rights that it would be inequitable not to join them. See Provident Tradesmens Bank & Trust v. Patterson, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968). The plaintiffs' employers plainly do not fall into that category. If the plaintiffs prevail in this action, they will have established only their right to have the state process their claims. Nothing in this action can possibly have any effect on the question of whether, as a matter of state discrimination law, the employers are liable to the plaintiffs.[5]
 
 C.
 
 37
 Finally, the defendant asserts that we should uphold the district court's grant of summary judgment because, as a matter of law, the plaintiffs are not entitled to the relief they seek. Specifically, the defendant argues that the Supreme Court's decision in Logan v. Zimmerman does not apply in this case because: the plaintiffs failed to pursue alternate remedies, the state has already closed the plaintiffs' discrimination claims, and the relief that plaintiffs are seeking would impose too large a burden on the state. We reject these efforts at distinguishing Logan.
 
 
 38
 The defendant contends that Logan does not apply because Bennett and Cunningham could have pursued a variety of alternate remedies in state court. This is incorrect. In Logan, the Supreme Court assumed that the claimant had some alternate remedy. See Logan, 455 U.S. at 435 & n. 9, 102 S.Ct. 1157 & n. 9. However, the Court made clear that the existence of an alternate remedy was no bar to an action in which the plaintiff is challenging an " 'established state procedure' that destroys his entitlement without according him proper procedural safeguards," id. at 436, 102 S.Ct. at 1158 (quoting Parratt v. Taylor, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981)). In this case, as in Logan, the claimants object to the state's deliberate decision not to process their claim. Therefore, the plaintiffs were not obligated to use any alternate state remedies that may have been available. See also Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (Sec. 1983 action does not require exhaustion of state remedies).[6]
 
 
 39
 We also reject the defendant's suggestion that Logan does not apply because in Logan the state had not officially closed the claimant's discrimination claim, while in this case the state has done so. As we have previously noted, the question of whether the state has complied with the minimal standards imposed by the Due Process Clause in terminating the property interest that plaintiffs have in their state law claims is a matter of federal law. Therefore, the fact that the state has closed the plaintiffs' claims is not dispositive. See Logan, 455 U.S. at 432, 102 S.Ct. at 1156 (quoting Vitek v. Jones, 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980)). A state may not deprive an individual of his or her property interest without due process, and then defend against a due process claim by asserting that the individual no longer has a property interest.[7]
 
 
 40
 The defendant's final argument is that Logan does not apply because that case involved a single claimant, while this case involves 3,000. The defendant notes that in Logan the Supreme Court observed that ordering the state to process the single claim at issue would not be "unduly burdensome," Logan, 455 U.S. at 435, 102 S.Ct. at 1157. The defendant goes on to suggest that if we reverse the district court's grant of summary judgment, the Department will be required to squander its entire budget to pursue claims that can no longer be proven. However, we do not believe that a judgment for the plaintiffs will result in the dire consequences that the defendant predicts.
 
 
 41
 The Supreme Court has stressed that due process is a flexible concept that requires a pragmatic balancing of private and public interests. See, e.g., id. We doubt that the plaintiffs can ever be put in the position in which they would have been had the state processed their claims when they were filed. However, the Due Process Clause does not require that this injustice be fully redressed. Rather, all that it commands is that a state provide procedural protections " 'appropriate to the nature of the case.' " Logan, 455 U.S. at 437, 102 S.Ct. at 1159 (quoting Mullane v. Central Hanover Trust Company, 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). If, on remand, the district court grants the plaintiffs' motion for summary judgment, the court will have the responsibility for fashioning a remedy that reflects the plaintiffs' interest in having their claims processed, as well as the Department's interest in avoiding procedures that are unnecessarily burdensome.
 
 VII.
 
 42
 Wanda Cunningham is temporarily substituted as a plaintiff pending the Illinois Probate Court's disposition of her petition to be appointed executor of her mother's estate. The defendant's motion to strike a portion of the appellants' reply brief is DENIED. The decision of the district court entering summary judgment on behalf of the defendant is REVERSED, and the case is REMANDED for further proceedings in conformity with this opinion.
 
 
 
 [1]
 We note that if the district court ultimately orders the defendant to process Hattie Cunningham's state-law discrimination claim, the defendant will be able to determine, as a matter of state law, whether that claim survives
 
 
 [2]
 Bennett argues that his claim was timely because, at the time he filed it, his union had not completed its grievance proceedings. Bennett did not raise this issue in his opening brief; his only discussion of the issue appeared in his reply brief. As a general rule, "[i]ssues appearing for the first time in a reply brief will not be considered by this Court," In re Bear, 789 F.2d 577, 579 (7th Cir.1986); see Fed.R.App.P. 28(c); 7th Cir.R. 9(e) (1987). Based on this rule, the defendant has moved to strike the state law discussion in Bennett's reply brief. However, we have also recognized that where an appellee raises a argument not addressed by the appellant in its opening brief, the appellant may reply. See Hussein v. Oshkosh Motor Truck Company, 816 F.2d 348, 359 (7th Cir.1987) (opinion of Posner, J.); id. at 360 (Ripple, J., dissenting in part). That is precisely what happened in this case. Because Bennett was responding to an argument made by the defendant in her opening briefs, the defendants' motion to strike is denied
 
 
 [3]
 We also note that Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), is no bar to the federal courts adjudicating this suit. In Pennhurst, the Supreme Court held that a federal court may not issue an injunction requiring a state officer to conform his or her conduct to the dictates of state law. See id. at 103-06, 104 S.Ct. at 909-11. In this case, however, the plaintiffs do not ground their claim on the defendant's alleged failure to comply with state law. Rather, the plaintiffs allege that the defendant has refused to comply with the dictates of the Due Process Clause. Although existing state procedures may be relevant in determining the dictates of due process, any injunction that may issue in this case will be based on the defendant's obligation to comply with minimal federal standards
 
 
 [4]
 Federal Rule of Civil Procedure 19 provides that a person should be joined as a party if "in the person's absence complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19(a)(1). The rule also requires that a person be joined if the person "is so situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest." Fed.R.Civ.P. 19(a)(2)(i)
 
 
 [5]
 Even if the defendants had persuaded us that the employers must be joined, we would not dismiss this action. Rather, we would remand and have the district court join the employers who, being present in Illinois, are clearly subject to its personal jurisdiction. See Fed.R.Civ.P. 21
 
 
 [6]
 The defendant argues that the Supreme Court's ruling in Nevada v. United States, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983), and our decision in Fromm v. Rosewell, 771 F.2d 1089 (7th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986), preclude a plaintiff who has any alternate remedy from maintaining a claim under Logan. This is not correct. In Nevada, the Supreme Court was called upon to determine whether the application of res judicata, which barred a party from relitigating a claim settled in a previous action, deprived the party of its claim without due process in violation of Logan v. Zimmerman. In distinguishing Logan, the Court suggested that the plaintiff in Logan had no alternate remedy. However, the dispositive factor in Nevada was that the plaintiff was in privity with one of the parties to the previous action. See id. at 114 n. 16. Rather than holding that Logan did not apply where a plaintiff had an alternate remedy, Nevada stands for the proposition that a party receives due process when its claim is litigated by a privy
 Our decision in Fromm similarly does not limit the availability of a Logan claim to a party who has not exhausted alternate remedies. In Fromm, we held that the Tax Injunction Act, 28 U.S.C. Sec. 1341 (1982), barred a federal court from hearing an Sec. 1983 claim based on the actions of state taxation authorities if the state provided an adequate remedy. We did not hint that the alternate remedy requirement extended to claims not covered by the Tax Injunction Act.
 
 
 [7]
 The defendant notes that in Steebe v. Railroad Retirement Board, 708 F.2d 250 (7th Cir.), cert. denied, 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983), and Ferrell v. Pierce, 785 F.2d 1372 (7th Cir.1986) (per curiam ), we did not require government agencies to reopen decisions that they deemed "closed." However, both cases turned on their specific facts, and thus have no relevance in this action. In Steebe, we held that Congress had divested the federal courts of jurisdiction to review the Railroad Retirement Board's decision not to reopen a claim. See id. at 254-56. In Ferrell, we construed the extent to which a consent decree required the defendant to reopen past claims. See Ferrell, 785 F.2d at 1384 n. 16
 The defendant also suggests that our recent decision in In re: Disclosure of Grand Jury Material, 821 F.2d 1290 (7th Cir.1987) bars us from ordering her to reopen the plaintiffs' claims. However, in Grand Jury we held that a district court is not obligated to vacate a final judgment as a result of a subsequent change in the law. Grand Jury, therefore, is wholly inapposite.